EMANUEL LAW
Sacha V. Emanuel (State Bar No. 218705)
  svemanul@gmail.com
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 881-6814
Facsimile: (310) 881-6801

Attorneys for Plaintiff
Neofonie GmbH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOFONIE GMBH, a German corporation, <br><br>        Plaintiff, <br><br>     vs. <br><br> ARTISSIMO DESIGNS LLC, a Delaware limited liability company, <br><br>        Defendant. | Case No.:_____ <br><br> **COMPLAINT FOR:** <br><br> **(1) BREACH OF WRITTEN AGREEMENT;** <br><br> **(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** <br><br> **(3) SERVICES RENDERED;** <br><br> **(4) QUANTUM MERUIT; AND** <br><br> **(5) UNJUST ENRICHMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Neofonie GmbH ("**Plaintiff**") complains against Defendant Artissimo Designs LLC ("**Defendant**") and alleges as follows:

## JURISDICTION AND VENUE

1.      Pursuant to 28 U.S.C. §1332(a)(2), this Court has original jurisdiction over this action because there is complete diversity between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.

2.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c).

## THE PARTIES

3.      Plaintiff Neofonie GmbH is a German corporation, with its principal place of business in Berlin, Germany.  Plaintiff was founded in 1998, is a leading IT full-service provider for digital solutions, and one of the top 20 e-commerce solution providers in Germany.  Plaintiff provides services such as conception, consulting, design, development, implementation, operation and hosting of e-commerce websites, among other services.

4.      Plaintiff is informed and believes and based thereon alleges that Defendant Artissimo Designs LLC ("**Defendant**") is a Delaware limited liability company with its principal place of business in Newport Beach, California. Defendant is in the business of manufacturing, distributing and/or selling wall art and wall décor products and claims to be an industry leader and leading supplier to big box retailers and department stores in North America.

5.      Plaintiff is further informed and believes and based thereon alleges that Defendant is managed by, or that its sole member is, Excelsior Capital Partners LLC ("Excelsior"), which is also a Delaware limited liability company with its principal place of business in Newport Beach, California.  Excelsior is an investment firm specializing in, among other things, distressed debt, companies facing liquidity restraints, and that are need of money to restructure or stabilize.

6.      Plaintiff is further informed and believes and based thereon alleges that Excelsior is managed by, or that its sole member is, Ravi Bhagavatula, who is an individual who resides in Newport Beach, California. Mr. Bhagavatula is also Defendant's Chief Executive Officer.

## GENERAL ALLEGATIONS

7.      On or about May 23, 2016, Plaintiff and Defendant entered into a written agreement entitled *Offer Development, Test and Launch of a MVP for artdesigns.com* (the "Agreement"). The Agreement was signed on behalf of Defendant by Mr. Bhagavatula.

8.      Pursuant to the Agreement, Defendant wanted to create a new online shop to sell its wall art. Defendant had been impressed with Plaintiff's work on a website Plaintiff had created for one of Plaintiff's other clients and hired Plaintiff to perform development services in connection with an e-commerce website, called artdesigns.com (the "website"), that would act essentially as an online shopping platform for the products offered for sale by Defendant (the "Project").

9.      According to the Agreement, the Project was structured into three development phases. The first phase, Phase 1, was completed prior to the signing of the Agreement. In Phase 1, Plaintiff and Defendant created the concept for the shop, which included a custom created solution, as opposed to a standard ecommerce solution, to transfer product backlog (essentially a description of all the functionality desired in the website) including an analysis of the requirements with all stakeholders and basic screen designs. The entire look and feel and behavior of a custom created website is coded line by line from scratch. This way, clients can specify exactly what custom features they want, and how they should look and function. This customization offers flexibility as clients can request new features as their business evolves, but it also comes at a price since this takes much longer and costs more money. Defendant requested a custom created solution to

accomplish and address its specific needs and because it sought to be the top performing business in its industry, with a website that stood out from its competitors.

10.    Phase 2 covered the development, testing, and launch of a Minimum Viable Product ("MVP") for the website.  The MVP was to contain the minimum features, i.e., enough features to allow Defendant to test assumptions on user behavior, business solutions, and make decisions on the further development of the product.  The anticipated launch date for the MVP was September 19, 2016.  In order to launch the MVP, however, it was imperative that Defendant purchase a license for a Content Management System called Magnolia which Defendant agreed to do in the parties' Agreement

11.    Phase 3 covered the operation and continuous improvement of the MVP.

12.    In May 2016, Plaintiff began work on Phase 2.  Plaintiff performed services in accordance with the Agreement and sent Defendant invoices for the work performed in May and June 2016, as it had in previous months for Phase 1 services, which Defendant paid.

13.    In or around July 2016, however, Defendant hired a new person (Marcio Chiaradia) to act as its director of e-commerce and oversee the Project.  Shortly after Mr. Chiaradia was hired, Defendant's cooperation with Plaintiff in the Project began to wane.  Plaintiff is informed and believes and based thereon alleges that Mr. Chiaradia had more experience with, and preferred a standard e-commerce website, an entirely different approach than the custom e-commerce website the parties had agreed to build, a standard shop that would get to market faster.

14.    This became increasingly apparent in and around August 2016, when Defendant started acting negatively toward the custom solution Plaintiff was developing, that Plaintiff and Defendant had already agreed to in the contract.

Defendant became uncharacteristically slow in paying past due invoices, proffered excuses without payment, nit-picked deliverables, and seemed uncooperative. Plaintiff is further informed and believes and based thereon alleges that, after Mr. Chiaradia was hired, and unbeknownst to Plaintiff, Defendant actually decided to move the Project in a different direction (towards the development of a standard e-commerce website) and decided to stop paying Plaintiff any additional amounts of money for the services Plaintiff had already performed.

15.    Defendant began making numerous requests to change features and other aspects of the website which were beyond the scope of the MVP and beyond the scope and budget of the project and the requirements defined and accepted in the early two months of the project. Defendant also failed to pay Plaintiff's July 2016 invoice.  Despite Defendant's unreasonable requests and failure to pay, Plaintiff continued to perform services and comply with the Agreement.

16.    On or about July 27, 2016, Plaintiff informed Defendant that Plaintiff had a Test System up and running but needed Defendant to purchase three licenses for Magnolia by August 12, 2016 in order to have the license keys in time for further development, testing, and launch in September 2016.  Plaintiff warned Defendant that failure to timely obtain the licenses would cause delays in the launch as Plaintiff would be unable to test the MVP without the licenses. Plaintiff's warnings fell on deaf ears.

17.    By August 2016, Defendant had failed to purchase the licenses and refused to purchase them when asked to do so by Plaintiff.  Defendant's failure to purchase the licenses and perform other terms of the Agreement, caused delays, created needless work that could have been avoided, and may have made it impossible to complete the Project by the launch date or at all.

18.    In good faith and without having any obligation to do so, Plaintiff used its own license for Magnolia to test and further develop the MVP.  Despite

Plaintiff's good faith, Defendant failed and refused to pay Plaintiff's August 2016 invoice. In late September or early October 2016, Defendant demanded that Plaintiff deliver the entire completed website before any past due invoices were paid.

19.   In November 2016, Mr. Bhagavatula demanded that Plaintiff stop work on the Project and informed Plaintiff that Defendant was cancelling the Agreement. The excuse given by Defendant was that Plaintiff's deliverables, which Defendant had approved in writing during the Project, apparently did not match what Defendant had requested.

20.   Defendant failed to pay Plaintiff's invoices for services performed in July, August and September 2016 which total approximately $288,103.

21.   Through this Complaint, Plaintiff now seeks, among other things, to collect from Defendant all amounts owed pursuant to the Agreement, in an amount no less than $288,103, plus all additional amounts lost by Plaintiff due to Defendant's failure and refusal to perform the Agreement.

## FIRST CLAIM FOR RELIEF
### FOR BREACH OF WRITTEN CONTRACT

22.   Plaintiff hereby incorporates by reference its allegations at Paragraphs 1 through 20, inclusive, as if fully set forth herein.

23.   Except as excused by the conduct of Defendant, Plaintiff has performed all of its obligations under the Agreement.

24.   Defendant breached the Agreement by, among other things, failing to pay Plaintiff for the services it performed, and failing to adhere to other terms of the Agreement, including without limitation, timely purchasing the requisite Magnolia license(s) to enable the requisite testing and launch of the MVP.

25.   As a result of Defendant's breach, Plaintiff has been damaged in a sum to be determined at trial, but which Plaintiff alleges exceeds $288,103.

## SECOND CLAIM FOR RELIEF

## FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

26.     Plaintiff hereby incorporates by reference its allegations at Paragraphs 1 through 24, inclusive, as if fully set forth herein.

27.     Plaintiff is informed and believes and based thereon alleges that Defendant breached its duty of good faith and fair dealing under its Agreement with Plaintiff by unfairly interfering with Plaintiff's rights and reasonable expectations to receive the benefits of its contract, including the right to have the support of its client, Defendant, and to be informed if and when its client decided to change direction on the Project.

28.     As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has been damaged in a sum to be determined at trial, but which Plaintiff alleges exceeds $288,103.

## THIRD CLAIM FOR RELIEF

## FOR SERVICES RENDERED

29.     Plaintiff refers to and incorporates the allegations contained in paragraphs 1 through 27 inclusive, as though fully set forth herein.

30.     Plaintiff performed services for Defendant at Defendant's request.

31.     Defendant promised to pay Plaintiff for the services it performed.

32.     Plaintiff has asked Defendant to pay for the services.  However, Defendant has refused, and continues to refuse, to pay Plaintiff for the services rendered.

33.     As a direct and proximate result of Defendant's failure to pay Plaintiff the reasonable value for the services rendered, Plaintiff has suffered damages in an amount to be proven at trial.

/ / /

## FOURTH CLAIM FOR RELIEF

### FOR QUANTUM MERUIT

34.    Plaintiff refers to and incorporates the allegations contained in paragraphs 1 through 32 inclusive, as though fully set forth herein.

35.    Plaintiff has performed services for Defendant at its request.

36.    Defendant promised to pay Plaintiff the reasonable value of the services to be performed at Defendant's request.

37.    Plaintiff has requested payment from Defendant for the reasonable value of the services Plaintiff has performed.  However, Defendant has refused, and continues to refuse, to pay Plaintiff for the services rendered.

38.    As a direct and proximate result of Defendant's failure to pay Plaintiff the reasonable value for the services rendered, Plaintiff has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### FOR UNJUST ENRICHMENT

39.    Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1-37, above, as though set forth in full herein.

40.    Based on the wrongful conduct of Defendant as hereinabove alleged, Plaintiff is informed and believes, and based thereon alleges that Defendant has unjustly enriched itself to the detriment of Plaintiff.

41.    Defendant's gain and unjust retention of the monies owing to Plaintiff has resulted from its wrongful conduct.

42.    As a direct and proximate result of Defendant's wrongful conduct, benefit and unjust retention of money owing to Plaintiff, Plaintiff has been damages in an amount subject to proof at trial.

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

On the First Cause of Action

1. For damages in an amount no less than $288,103 plus any and all other amounts to which Plaintiff is entitled, including without limitation, lost profits.

On the Second Cause of Action

2. For damages in an amount no less than $288,103 plus any and all other amounts to which Plaintiff is entitled, including without limitation, lost profits.

On the Third Cause of Action

3. For the reasonable value of the services rendered by Plaintiff;

On the Fourth Cause of Action

4. For the reasonable value of the services rendered by Plaintiff;

On the Fifth Cause of Action

5. For restitution of all moneys wrongfully obtained and retained by Defendant.

On All Causes of Action

6. For costs of suit incurred herein;

7. For pre-judgment and post-judgment interest and late fees on all delinquent amounts as permitted by the Agreement, and applicable law; and

8. For such other further relief as the Court may deem just and proper.

Dated: May 2, 2017

EMANUEL LAW


By:/s/Sacha V. Emanuel
    Sacha V. Emanuel
    Attorneys for Plaintiff Neofonie GmbH

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff demands a trial by jury of all issues triable of right by jury.

3

Dated: May 2, 2017

4
                                    EMANUEL LAW
5

6                                   By:/s/Sacha V. Emanuel
                                         Sacha V. Emanuel
7                                        Attorneys for Plaintiff Neofonie GmbH

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT