EMANUEL LAW FIRM
Sacha V. Emanuel (SBN 218705)
svemanul@gmail.com
Raphael B. Emanuel (SBN 218755)
remanuellaw@gmail.com
1875 Century Park East, Suite 2150
Los Angeles, California 90067
Telephone:  (310) 881-6814
Facsimile:   (310) 881-6801

Attorneys for Plaintiff/Counter-Defendant
Neofonie GmbH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOFONIE GMBH, a German corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ARTISSIMO DESIGNS LLC, a Delaware limited liability company,<br><br>Defendant.<br>―――――――――――――――――<br>AND COUNTERCLAIM | Case No.: 8:17-cv-00772 CJC (JDEx)<br><br>**OPPOSITION OF NEOFONIE GMBH TO ARTISSIMO DESIGNS, LLC'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF DR. ALI KHOSHGAZARAN, PH.D.**<br><br>Hon. Cormac J. Carney<br><br>Hearing: January 14, 2019<br>Time:      3:00 p.m.<br>Place: Courtroom 7C, 350 W. 1st St. Los Angeles, California 90012<br><br>[Filed concurrently with the Declaration of Sacha V. Emanuel] |

**TABLE OF CONTENTS**

Pages

I. INTRODUCTION..................................................................................2

II. RELEVANT BACKGROUND FACTS.................................................3

    A. The Parties............................................................................................3

    B. The Project...........................................................................................3

    C. Key Terms of the Phase II Agreement.................................................4

    D. Defendant Breached the Phase II Agreement......................................4

    E. Defendant's Counterclaim....................................................................5

    F. Neofonie Designates Dr. Ali Khoshgazaran, PhD as Its Expert Witness..................................................................................................5

III. ARGUMENT...........................................................................................5

    A. The Federal Rules of Evidence Liberally Admit Expert Testimony...5

    B. Dr. Khoshgazaran's First Opinion Should Not Be Excluded Because It Is Reliable And Helpful........................................................................6

        1) Dr. Khoshgazaran First Opinion Is Reliable Because It Is Based On Sufficient Data..............................................................................6

        2) Dr. Khoshgazaran's First Opinion Is Reliable Because It Is The Product of Reliable Principles And Methodology That Are Accurately Applied To The Facts..............................................8

        3) Dr. Khoshgazaran's First Opinion Is Helpful Because It Will Assist The Jury In Understanding The Evidence And Determining Facts In Issue.........................................................9

    C. Dr. Khoshgazaran's Second And Third Opinions Are Relevant....10

    D. Dr. Khoshgazaran's Fourth Opinion Regarding Defendant's Inaccurate Portrayal Of The Severity Of Bugs/Defects In The MVP Is Reliable And Helpful...........................................................................11

E. Dr. Khoshgazaran's Fifth Opinion Should Not Be Excluded Because It Will Help The Jury Decide The Cause Of Delays In Launching The MVP...……………………………………………………...13

F. Defendant's Argument That Neofonie Should Not Be Permitted To Rely On Documents It Did Not Produce Is Based On Inaccurate Information And Has No Merit.…...…………………………………14

IV. CONCLUSION……………...…………………………………..15

**PLAINTIFF NEOFONIE'S OPPOSITION TO ARTISSIMO'S MOTION IN LIMINE**

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

**Federal**

Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988)…………………….5

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)……………5

Domingo v. T.K., 289, F.3d 600 (9th Cir. 2002)………………………………….8

EEOC v. Sears, Roebuck & Co., 628 F. Supp. 1264 (N.D. Ill. 1986)……………9

United States v. Cohen, 510 F.3d 1114 (9th Cir. 2007)…………………………...9

U.S. v. Frazier, 387 F.3d 1244 at 1262-63 (11th Cir. 2004)……………………..10

**Federal Statutes**                                            **PAGE**

Fed. R. Evid 401…………………………………………………………………..10

Fed. R. Evid 403……………………………………………………………………13

Fed. R. Evid 602...…………………………………………………………………..11

Fed. R. Evid 702…………………………………………………………………...5

Fed. R. Evid 703……………………………………………………………………11

Fed. R. Evid 704……………………………………………………………………11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff, Neofonie GmbH ("Plaintiff" or "Neofonie"), seeks to offer at trial the testimony of Dr. Ali Khoshgazaran, a highly educated, experienced, and accomplished expert, knowledgeable in the fields of computer science and e-commerce.  In its motion, Defendant Artissimo Designs, LLC ("Defendant") does not question the qualifications of Dr. Khoshgazaran.  Instead, Defendant argues that for a number of reasons, none of which are convincing, his opinions are not helpful, reliable, and/or relevant.

This case involves the development, testing, and launch of a complex, custom-made Minimum Viable Produce ("MVP") for an ecommerce website called *artdesigns.com*.  The parties agreed to use an agile development methodology called "Kanban" to develop the MVP which required timely and accurate communication between the parties.  Defendant inaccurately claims that Neofonie caused delays in the development of the project, and did not timely deliver an MVP free of bugs/defects which prevented the MVP from being launched.

The opinions of Dr. Khoshgazaran will help explain the evidence to the jury and assist them in determining facts as some members are likely to be unfamiliar with terms such as MVP and agile development and/or the website development process in general.  Dr. Khoshgazaran's testimony will help the jury better understand the terminology and process which will help put in context what the parties agreed to and assist the jury in determining facts.

Dr. Khoshgazaran's opinions are also reliable contrary to Defendant's arguments.  Dr. Khoshgazaran did not base any opinion on reviewing only one feature of the MVP as Defendant inaccurately contends in its motion, did not need to test the MVP in order to form any of his opinions, and did not make credibility determinations.  In Sections 2, and 4.5 of his Report, Dr. Khoshgazaran identified

the materials considered and analysis methods used in forming his opinions. Dr. Khoshgazaran also provided citations to the specific material used in support of the statements and opinions made in his Report and even provided screen shots of the material he believed was highly relevant. Dr. Khoshgazaran also properly applied his analyses methods to the facts of this case as shown in Section 5 of the Report. Because his opinions are based on sufficient data, and the product of sound and properly applied analysis methods, Dr. Khoshgazaran's opinions are reliable.

Dr. Khoshgazaran's testimony is also relevant, even despite Defendant's contention that it is abandoning certain theories, because it will help demonstrate how the project timeline evolved, and how this evolution affected the original preliminarily, proposed time for delivery of the MVP.

For these reasons and the reasons set forth below, Defendant's motion should be denied.

## II.   RELEVANT BACKGROUND FACTS

### A. The Parties

Neofonie specializes in the design, development, testing, implementation and launching of websites, including ecommerce websites and mobile applications. Neofonie has been in business for approximately 20 years, has around 180 employees, and is based in Berlin, Germany.

Defendant, Artissimo, has been in business for approximately three years. Defendant was formed by its owner, a private equity firm, to take over the business of a bankrupt company who sold wall art to major retailers.

### B. The Project

On May 23, 2016, Neofonie and Defendant entered into a written agreement (the "Phase II Agreement") wherein the parties agreed to "work together" to develop, test, and launch a Minimum Viable Product ("MVP") for a new, ecommerce website called *artdesigns*.com ("artdesigns")  The Phase II Agreement

F91112F5.doc                                         -3-

covered the second phase of a three phase development process for artdesigns. The first phase (Phase I) was essentially an information gathering phase during which the parties met and identified certain key features for the MVP. Phase I was successfully completed on May 6, 2016. In Phase II, the parties were to develop, test, and launch the MVP, which is essentially a bare-bones version of a product that is used to obtain customer feedback from which further development decisions can be made. In Phase III, the parties were to continue improving the MVP and its operation based upon the feedback received from the customers after its launch. The parties never reached the third phase (Phase III) because Defendant wrongfully and improperly terminated the Phase II Agreement and Neofonie's services on the project.

**C. Key Terms of the Phase II Agreement**

In developing the MVP, the parties agreed to use a collaborative methodology called Kanban, agreed to share testing responsibilities, and agreed upon a preliminary launch date of September 19, 2016 (which was subject to change). Defendant also agreed to purchase a license to the content management system Magnolia which would act as the foundation on which the MVP would be built, and launched. As far as payment, Defendant agreed to pay Neofonie within 14 days of receipt of its invoices.

**D. Defendant Breached the Phase II Agreement.**

Defendant breached the Phase II Agreement, by, among other things: (1) Failing to pay Neofonie (despite admitting in writing that it owed the money; (2) Failing to purchase a Magnolia license, which unquestionably prevented the MVP from being launched; (3) Failing to adhere to the Kanban methodology in developing the MVP which caused delays during the development process; (4) Failing to adhere to principles of MVP development; (5) Failing to timely, and accurately comply with its QA/testing responsibilities; and (6) Wrongfully and

improperly terminating the Agreement.

### E. Defendant's Counterclaim

In its counterclaim, Defendant contends that Neofonie caused delays in the project, did not deliver the MVP in a timely manner, and delivered an MVP that contained bugs (or defects) that prevented the MVP from being launched.

### F. Neofonie Designates Dr. Ali Khoshgazaran, PhD as Its Expert Witness.

On September 18, 2018, Neofonie designated as its expert witness Dr. Ali Khoshgazaran. Also on September 18, Defendant was provided with Dr. Khoshgazaran's expert report and made aware that he was available for deposition in mid-October, 2018. Defendant did not attempt to arrange for the deposition of Dr. Khoshgazaran until the day before Thanksgiving. Defendant then decided not to take Dr. Khoshgazaran's deposition and never even attempted to obtain from him any of the documents he relied on in forming his opinions.

## III. ARGUMENT

### A. The Federal Rules of Evidence Liberally Admit Expert Testimony.

A witness may provide expert opinion on issues at trial if the opinion is helpful to the trier of fact, if the witness is sufficiently qualified and if the opinion is reliable. Fed. R. Evid. 702. Expert testimony is liberally admissible under the Federal Rules of Evidence. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993) (Rule 702 is a function of the "liberal thrust" of the Federal Rules of Evidence and their "general approach of relaxing the traditional barriers to 'opinion' testimony'") (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988).

Although the proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the testimony is admissible, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702

F91112F5.doc -5-

advisory committee's note. The post-Daubert amendment to Rule 702 is "not intended to provide an excuse for an automatic challenge to the testimony of every expert." Id.

The "helpfulness" standard of Rule 702 requires that scientific evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue--a condition that goes primarily to relevance--requires a valid scientific connection to an issue in the case at hand. Only expert testimony which does not relate to any issue in the case at hand is not relevant and thus is nonhelpful.

Defendant does not challenge the qualifications of Dr. Khoshgazaran. Rather, based on misrepresentations and arguments that have no merit, Defendant attempts to challenge the reliability of his opinions and helpfulness to the jury.

### B. Dr. Khoshgazaran's First Opinion Should Not Be Excluded Because It Is Reliable And Helpful.

Fed. R. Evid. 702 considers expert testimony reliable if it is (a) based on sufficient facts or data, (b) the product of reliable principles and methods, and (c) the witness has applied the principles and methods reliably to the facts of the case.

#### 1) Dr. Khoshgazaran's First Opinion Is Reliable Because It Is Based On Sufficient Data.

The purpose of requiring that expert testimony be based on sufficient facts or data is to exclude testimony based solely on conjecture or supposition. Fed. R. Evid. 702. In determining whether an expert's testimony is based on sufficient facts or data, court's consider factors such as whether the expert proposes to testify based on matters naturally out of research the expert has conducted independent of the litigation, or whether the expert has developed am opinion solely and expressly for the purpose of testifying. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1317 (9th Cir. 2005).

Here, Dr. Khoshgazaran has cited large bodies of evidence underlying his

opinion and conducted much of the research prior to being asked to testify in this action. Defendant's argument that Dr. Khoshgazaran's testimony is not reliable is based on the false assertion that he relied on only one feature of the MVP as a basis for his opinion. However, in Section 5.2, ¶95, of his Report, Dr. Khoshgazaran states he formed his first opinion through analysis of communications between the two parties over time as well as JIRA and Confluence logs that demonstrated that Defendant did not properly follow key principles of Agile thinking and MVP development which negatively affected the planned launch of the MVP.

Dr. Khoshgazaran also states that he based his opinions on: (1) his years of experience as a technology executive and as a computer scientist; (2) relevant documents produced in this case; (3) scientific literature, authoritative texts, and other references in the field of the claimed technologies, where cited in his report. (See Section 2, page 7 of Report).

Defendant also cannot in good faith conclude from Dr. Khoshgazaran's use of the newsletter feature as an example of the causes for delay, that Dr. Khoshgazaran did not analyze other features. In fact, Dr. Khoshgazaran's Report makes clear that he reviewed other features included within the 398 tasks labeled "MVP Launch", representing the tasks related to the MVP product for Defendant.

Dr. Khoshgazaran's analysis of the newsletter feature was only one example of Defendant's straying from MVP principles during the development of artdesigns. To better understand the effect of changing the scope and level of detail of various features requested by Defendant, Dr. Khoshgazaran tracked the evolution of the newsletter feature specification, from inception to implementation and later deployment, so he could gain a better understanding of the root causes for the delay completing the MVP product.

His analysis of this feature demonstrated how changes to the feature from the original scope, held up the project and caused unnecessary delays.

**PLAINTIFF NEOFONIE'S OPPOSITION TO ARTISSIMO'S MOTION IN LIMINE**

While Defendant may not claim that this is one of the features that blocked the go-live, it does allege that "due to the seasonal nature of Defendant's business model", delays in the development of the website beyond that originally preliminarily projected, but not promised, date caused it harm because it missed the 2016 holiday season. Through his meticulously detailed analysis, Dr. Khoshgazaran's opinion rebuts this contention and is therefore helpful to the jury.

### 2) Dr. Khoshgazaran's First Opinion Is Reliable Because It Is The Product Of Reliable Principles And Methodology That Are Accurately Applied To The Facts

Expert opinion developed using reliable principles and methods satisfy the second prong of Rule 702's reliability requirement. Evidence of reliability includes: whether the technique or theory can be or has been tested; whether the theory has been subject to peer review and publication; the known or potential error rate the existence and maintenance of standards and controls; and whether the technique or theory has been generally accepted by the relevant academic community. Id at 1316-17.

As with other aspects of the Rule 702 analysis, courts take a broad view as to the reliability of principles and methodology. Daubert, 509 U.S. at 580 (reliability inquiry is "flexible").

An expert's testimony must permit a court to reasonably conclude that the opinion follows from the analysis: the expert is prevented from making wholly subjective and unfounded extrapolations. Domingo v. T.K., 289, F.3d 600, 606-07 (9th Cir. 2002). The Rules do not impose a requirement that the expert opinion be 100% certain beyond any doubt, reasonable interpretations and conclusions based on the facts are admissible. Daubert, 509 U.S. at 590 ('it would be unreasonable to conclude that the subject of scientific testimony be known" to a certainty; arguably, there are no certainties in science.").

As explained in his Report, Dr. Khoshgazaran used the Software Architecture Recovery and Software Process Assessment analysis methods to form his opinions. In the motion, Defendant does not argue that these methods are unreliable or not generally accepted.  Nor, as mentioned, does Defendant, contend that the numerous publications, awards, and years of education, research and work history do not sufficiently demonstrate the reliability of Dr. Khoshgazaran's testimony.

Here, Dr. Khoshgazaran's Report and his previous publications demonstrate his conclusions are not the result of subjective whimsy or unfounded extrapolations. He has dedicated years to study the subject of computer science, software engineering, and the development, structure, behavior and quality of software systems.  Based on this and his review of documentary and other evidence, Dr. Khoshgozaran has produced a meticulous and detailed analysis of how the parties interacted, or otherwise, during the Kanban process.

### 3) Dr. Khoshgazaran's First Opinion Is Helpful Because It Will Assist The Jury In Understanding The Evidence And Determining Facts In Issue.

Qualified, reliable expert testimony is admissible if it helps the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702; United States v. Cohen, 510 F.3d 1114, 1123-25 (9th Cir. 2007).

Expert testimony frequently helps the trier of fact in cases where context matters. EEOC v. Sears, Roebuck & Co., 628 F. Supp. 1264, 1308 (N.D. Ill. 1986).

The "helpfulness" standard of Rule 702 of the Federal Rules of Evidence (FRE), which requires that scientific evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue--a condition that goes primarily to relevance--requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility; for purposes of Rule 702, expert testimony which

does not relate to any issue in the case at hand is not relevant and thus is nonhelpful.

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . ." U.S. v. Frazier, 387 F.3d 1244 at 1262-63 (11th Cir. 2004).

Defendant argues that Dr. Khoshgazaran's testimony would not be helpful to the trier of fact and would be confusing because he relies on industry standards rather than the agreement and his definition of the MVP is inconsistent with the definition in the agreement.  These arguments have no merit.  It is likely that many members of the jury will be unfamiliar with the MVP development process and technical terms such as MVP, "Kanban methodology", "agile development software", or "content management system".  It is also likely that many members of the jury will be unfamiliar with the roles of these terms in the development of a complex, e-commerce MVP or understand the evidence without the help of an expert in e-commerce website technology.  Dr. Khoshgozaran will provide insight into the meaning of these terms, how they interrelate, and how the parties need to interact and provide feedback to each other in the website development process.

Moreover, Dr. Khoshgazaran's opinions regarding an MVP are consistent with the Phase II Agreement. His analysis uses the features as defined in the MVP to show how far from these defined features Defendant strayed during development, resulting in unnecessary delays.

**C.   Dr. Khoshgazaran's Second And Third Opinions Are Relevant**

Under Fed. R. Evid 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Fed. R. Evid 702 requires that to be admissible, the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue".

Under Fed. R. Evid 704, an expert may testify to an ultimate issue in the case and such opinion is not objectionable just because it embraces an ultimate issue.

In the motion, Defendant claims that because it intends to abandon certain allegations made in its counterclaim relating to Neofonie's use or nonuse of certain best practices, that Dr. Khoshgazaran's opinions contradicting these allegations should be excluded. However, Dr. Khoshgazaran's opinions regarding these areas are still relevant as they will help demonstrate how the timeline evolved by agreement of the parties and how this evolution affected the original preliminarily proposed time for delivery. Far from any question of Neofonie's repudiation, Dr. Khoshgazaran's analysis details many instances of additional unbilled hours performed by Neofonie in an effort to accommodate Defendant's unreasonable changes before drawing the line by not including in the MVP deliverables, features that were simply and blatantly beyond the scope of the features described in the Phase II Agreement. Because these opinions will assist the jury in determining how the timeline for the project evolved, they are relevant.

Defendant also seeks to exclude Dr. Khoshgazaran's opinions as to facts of which he has no firsthand knowledge. However, unlike an ordinary witness, an expert witness is permitted wide latitude, under the Federal Rules of Evidence, to offer opinions, including those that are not based on firsthand knowledge or observation. (See Fed. R. Evid. 602 and 703).

**D.  Dr. Khoshgazaran's Fourth Opinion Regarding Defendant's Inaccurate Portrayal Of The Severity Of Bugs/Defects In The MVP Is Reliable And Helpful.**

Dr. Khoshgazaran's fourth opinion is reliable because it is based on sufficient facts or data, the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts. See Fed. R. Evid. 702.

Defendant's contention that Dr. Khoshgazaran's fourth opinion is not reliable

F91112F5.doc                -11-

because he could have but did not test the website has no merit. Dr. Khoshgazaran is not offering an opinion as to the workability of the MVP delivered by Neofonie. Instead, he is offering his opinion regarding what conclusions are consistent with the sources of information reviewed. He was asked to review relevant agreements, discovery responses, and communications between the parties about the development of the MVP and provide his opinion based on them. These communications, along with his vast knowledge and experience, are sufficient facts or data for his opinion to not be based on conjecture or supposition.

Dr. Khoshgazaran also used reliable principles and methods to form his opinion and applied these methods and principles reliably to the facts. As stated in his Report, Dr. Khoshgazaran used the Software Architecture Recovery and Software Process Assessment approaches to determine that Defendant had inaccurately portrayed the severity of bugs and Neofonie's treatment of them. Using this approach, Dr. Khoshgazaran did not weigh the credibility of the opinions of either party. Rather, he quoted verbatim from the JIRA tickets used by and accessible to both parties, and other documents the Defendant's statements and provided screenshots of the documents in which the statements were made.

As stated previously, evidence is helpful if it helps the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702.

Dr. Khoshgazaran's opinion that a delay of one month is common is helpful. In forming this opinion, Dr. Khoshgazaran was responding to yet another inaccurate allegation made by Defendant that it had been delayed approximately one year in getting its ecommerce site implemented as a result of Neofonie. This is simply factually inaccurate. That project delays of about a month or so (which were actually caused by Defendant and not Neofonie) are common will help the jury understand why the timeline was preliminary, that it was not unusual for the launch date to be put back, and that a launch date put back by one month or so is common

and therefore may not have been a material breach even assuming Neofonie was the cause of the delay (which it was not).

Under Fed. R. Evid. 403, evidence may be excluded where it is minimally relevant, relates to no issue of fact, and would waste the court's time. Here, the evidence relates to an important area – Defendant's flawed and inaccurate contention that they were delayed approximately one year in getting their ecommerce site implemented and that the real delay of about one month or so was significant. The opinion refuting this is not only relevant but it would not waste the jury's time.

### E. Dr. Khoshgozaran Fifth Opinion Should Not Be Excluded Because It Is Helps The Jury Decide The Cause Of Delays In Launching The MVP.

As stated previously, evidence is helpful if it helps the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702.

Defendant's argument that Dr. Khoshgazaran has simply summarized documents or made improper credibility determinations which will not help the jury is lacking in merit. The purpose of Dr. Khoshgazaran's fifth opinion is to assist the jury in understanding how the delays occurred in this project which Defendant is attempting to misrepresent. To the extent Dr. Khoshgazaran has reiterated statements made by the parties on JIRA or in other documents, they are necessary to demonstrate how he arrived at his conclusions. Revealing the facts that he relied on in forming his opinions is not a basis to exclude his testimony. In fact, if Dr. Khoshgazaran had not included these facts, Defendant would argue that the statements in the report were conclusory.

The probative value of Dr. Khoshgazaran's fifth opinion is not outweighed by the prejudicial value to Defendant given that it is highly relevant, relates to an important issue of fact, and will not waste the jury's time.

F91112F5.doc -13-

**PLAINTIFF NEOFONIE'S OPPOSITION TO ARTISSIMO'S MOTION IN LIMINE**

### F. Defendant's Argument That Neofonie Should Not Be Permitted To Rely On Documents It Did Not Produce Is Based On Inaccurate Information And Has No Merit.

Defendant's last argument that because Dr. Khoshgazaran's opinions should be excluded because they are based in part on, among other documents, electronically stored JIRA tickets allegedly not produced has no merit.

Defendant has (or should have) access to all the JIRA tickets created during the development of the MVP as it used JIRA to communicate with Neofonie. In his Report, Dr. Khoshgazaran cited to the individual JIRA tickets on which he relied in forming his opinions and in some cases even included a screen shot of the actual ticket. Defendant, who still has access to JIRA, can log on to JIRA and download each and every ticket to which Dr. Khoshgazaran refers in his Report.

Even though Defendant has (and at all relevant times had) access to JIRA, Neofonie produced physical copies of the JIRA tickets which were contained in the project folders and a breakdown of every JIRA ticket created during the project. Defendant's representation that only two JIRA tickets were produced is inaccurate.

Defendant also improperly requested the JIRA tickets reviewed by Dr. Khoshgazaran from Neofonie through a document request rather than serving a subpoena on Dr. Khoshgazaran or arranging for his deposition through counsel for Neofonie. Any party may depose a person who has been identified as an expert whose opinions may be presented at trial. FRCP 26(b)(4)(A). Requesting through a document production request that Neofonie produce documents relied upon by its expert is improper as the expert is an independent third who is better suited to know what documents he relied on in his Report. These facts were all explained to Defendant's counsel during the meet and confer.

In good faith and without having any obligation to do so, Neofonie has reminded Defendant that it has access to JIRA and can print out any tickets identified by Dr. Khoshgazaran in his report.

## IV. CONCLUSION

For the foregoing reasons, Neofonie respectfully requests that this Court deny Defendant's *motion in limine*.

DATED: December 24, 2018

EMANUEL LAW FIRM

By:/s/
Sacha V. Emanuel
Attorneys for Plaintiff

F91112F5.doc

-15-

**PLAINTIFF NEOFONIE'S OPPOSITION TO ARTISSIMO'S MOTION IN LIMINE**