BRADLEY ARANT BOULT
CUMMINGS LLP
Roger G. Jones (*pro hac vice*)
rjones@bradley.com
Peter C. Sales (*pro hac vice*)
psales@bradley.com
Kimberly M. Ingram (SBN 305497)
kingram@bradley.com
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-2365
Facsimile: (615) 252-6365

*Attorneys for Defendant*
*Artissimo Designs LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOFONIE GMBH, a German corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>ARTISSIMO DESIGNS LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.: 8:17-cv-00772 CJC (JDEx)<br><br>DEFENDANT/COUNTER-PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF ALI KHOSHGAZARAN, PH.D |
| ARTISSIMO DESIGNS LLC,<br><br>        Counter-Plaintiff.<br><br>vs.<br><br>NEOFONIE GMBH<br><br>        Counter-Defendant. | Hearing Date: January 14, 2019<br>Hearing Time: 3:00pm<br>Courtroom: 7C<br><br>The Honorable Cormac J. Carney |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

I.    INTRODUCTION ...................................................................... 1

II.   ARGUMENT ............................................................................ 2

A.    Dr. Khoshgazaran's First Opinion Should Be Excluded. ................. 2

    1.    The First Opinion Is Not Reliable. ...................................... 3

    2.    The First Opinion Is Not Helpful to the Trier of Fact. ............ 4

B.    Dr. Khoshgazaran's Second and Third Opinions Should Be Excluded as Moot. ..................................................................... 6

    1.    The Second and Third Opinions Are Not Relevant for Another Purpose. ............................................................... 6

    2.    The Court Should Also Exclude These Opinions Because Neofonie Cannot Introduce Foundational Facts Through an Expert in Lieu of Lay Testimony. ........................ 8

C.    Dr. Khoshgazaran's Fourth Opinion Should Be Excluded Because It Is Neither Reliable Nor Helpful. ................................... 10

    1.    The Opinion as to Whether Artissimo Accurately Represented the Severity of Bugs is Not Reliable or Helpful. ........................................................................ 10

    2.    The Opinion as to Whether a Delay of One Month Is Common Is Not Helpful. .................................................... 11

D.    Dr. Khoshgazaran's Fifth Opinion Should Be Excluded Because It Is Not Helpful. ..................................................................... 12

E.    Neofonie Should Not Be Permitted to Rely on Documents It Has Not Produced ................................................................... 13

    1.    Neofonie Had an Obligation to Produce Responsive Documents in Its Possession, Custody, or Control. ............... 14

i                                        8:17-cv-00772

4834-8807-0276

2.      Artissimo Does Not Have, or Have Access to, the Responsive Documents........................................................ 17

III.    CONCLUSION.......................................................................... 19

CERTIFICATE OF SERVICE ............................................................ 21

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actuate Corp. v. Aon Corp.*,
2012 WL 2285187 (N.D. Cal. June 18, 2012) ................................ 11

*In re Apollo Grp. Inc. Sec. Litig.*,
527 F. Supp. 2d 957 (D. Ariz. 2007)...........................................7, 8

*Bail Busters, Inc. v. Sterling*,
2011 WL 13269703 (C.D. Cal. Oct. 13, 2011) .......................... 14, 15

*Driskill Agr. Servs. Inc. v. Dimare Fresh Inc.*,
2015 WL 464373 (D. Ariz. Feb. 4, 2015) ....................................7, 8

*Hernandez v. City of Vancouver*,
2009 WL 279038 (W.D. Wash. Feb. 5, 2009) .................................. 5

*Johnson v. Gen. Mills Inc.*,
2012 WL 13015023 (C.D. Cal. May 7, 2012)................................. 10

*McClellan v. I-Flow Corp.*,
710 F. Supp. 2d 1092 (D. Or. 2010)............................................... 6

*Pac. Fuel Co., LLC v. Shell Oil Co.*,
2008 WL 11336467 (C.D. Cal. Jan. 24, 2008)..............................7, 8

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
257 F.R.D. 607 (E.D. Cal. 2009)................................................... 5

*Santos v. TWC Admin. LLC*,
2014 WL 12558009 (C.D. Cal. Aug. 4, 2014)................................ 15

*Silgan Containers v. Nat'l Union Fire Ins.*,
2011 WL 1058861 (N.D. Cal. Mar. 23, 2011)................................ 15

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) ............................................ 2

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

*U.S.A. v. Cruikshank*,
  No. CR 04-836-GHK, 2006 WL 8439699 (C.D. Cal. May
  5, 2006) ....................................................................................... 5

**Statutes**

Cal. Civ. Code § 1638 .................................................................. 5, 7

Cal. Civ. Code § 1644 .................................................................. 5, 7

Cal. Civ. Code § 1645 ...................................................................... 7

**Other Authorities**

Civil L.R. 7-7 ............................................................................... 16

Civil L.R. 7-10 ............................................................................... 1

Fed. R. Civ. P. 26 .................................................................... 15, 19

Fed. R. Civ. P. 34 ............................................................. 14, 15, 18

Fed. R. Evid. 403 ............................................................................ 6

Fed. R. Evid. 404 .......................................................................... 12

Fed. R. Evid. 702 ................................................................. 2, 6, 12

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

# I.  **INTRODUCTION**

Pursuant to L.R. 7-10, Defendant/Counter-Plaintiff Artissimo Designs LLC ("Artissimo") respectfully submits this Reply Memorandum of Points and Authorities, and three accompanying exhibits,[1] in support of its Motion to Exclude Expert Testimony of Ali Khoshgazaran, Ph.D. (the "Motion"), the proposed expert witness of Plaintiff/Counter-Defendant Neofonie GMBH ("Neofonie").  As explained below, Neofonie has failed to show that any of Dr. Khoshgazaran's proffered opinions are reliable, helpful to the trier of fact, *and* the proper subject of expert testimony.  Dr. Khoshgazaran's opinions should be excluded for failing to meet these prerequisites alone.

Furthermore, Dr. Khoshgazaran's opinions should be excluded to the extent that they are based on documents Neofonie has not produced.  Artissimo's Motion showed and Neofonie has admitted that Artissimo requested these documents and Neofonie did not produce them.  Artissimo was entitled to seek such documents from Neofonie to the extent that they were in Neofonie's possession, custody, or control, and Neofonie has refused to satisfy its obligation to participate in discovery and produce the documents.  Moreover, contrary to Neofonie's assertions, Artissimo does not have possession of or access to these documents.  As a result, all testimony based on documents that Neofonie has refused to produce should be excluded from trial.

---

[1] The Exhibits are: (1) Exhibit F – Artissimo's First Set of Requests for Production of Documents and Things; (2) Exhibit G – Dec. 24, 2018 email from S. Emanuel to K. Ingram; and (3) Exhibit H – Declaration of Kimberly M. Ingram, which authenticates Exhibits F and G and provides additional factual information.  These Exhibits are labeled consecutive to the Motion.

## II.   <u>ARGUMENT</u>

Neofonie has failed to establish why any of its proposed expert's opinions are admissible.  Neofonie's extolment of Dr. Khoshgazaran's general credentials does not establish the basic prerequisites for his testimony to be offered in this case.  As the proponent of the evidence, Neofonie bears the burden of establishing its admissibility.  *See In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) ("The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements are met.") (citing Fed. R. Evid. 702).  Neofonie has failed to satisfy its burden, and Dr. Khoshgazaran's opinions should be excluded, for the reasons stated in the Motion and as explained further below.

**A.    Dr. Khoshgazaran's First Opinion Should Be Excluded.**

In its Motion, Artissimo argued that Dr. Khoshgazaran's first opinion—that Artissimo "failed to conform to important principles of Agile software development and MVP launch," resulting in "unnecessary delays in development of the Website" (Dkt. 44-1 [Mot. Ex. A, Expert Rep.] at ¶ 90)—should be excluded because it is not reliable or relevant. (Dkt. 44-6 [Def.'s Mem.] at 5–8.)[2]   In response, Neofonie argues that Dr. Khoshgazaran's opinion is the result of reliable principles and that the jury will benefit from Dr. Khoshgazaran's explanation of industry standards. (Dkt. 52 at 6–10.)  Not so.

---

[2]  For clarity, all references to Artissimo's Motion [Dkt. 44] or Memorandum [Dkt. 44-6] and Neofonie's Response in Opposition thereto ("Response") [Dkt. 52] are to the page number of the document itself, rather than the ECF-generated header.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

## 1.   The First Opinion Is Not Reliable.

Artissimo's Motion pointed out that Dr. Khoshgazaran based his opinion of Artissimo's approach to the Project on *one* out of 46 features required in the Agreement.  (Dkt. 44-6 at 6.)   Indeed 21 out of 29 paragraphs devoted to this opinion discuss this feature exclusively, and the remaining eight paragraphs are simply summaries of the materials Dr. Khoshgazaran reviewed and his conclusions.  (Dkt. 44-1 at ¶¶ 95–123 (discussing opinion #1).)   In response, Neofonie argues that Dr. Khoshgazaran relied on more than just his analysis of the one feature—in particular, his experience in the arena, "relevant documents produced in this case," and authorities from the field.  (Dkt. 52 at 10.)

As a threshold matter, Dr. Khoshgazaran's experience goes to his qualification as an expert; it does not establish that *this opinion* is reliable. (*Contra* Dkt. 52 at 9.)  And while Dr. Khoshgazaran certainly states that his opinions are based on "scientific literature, authoritative texts, and other references in the field of the claimed technologies, *where cited in this report*" (Dkt. 44-1 at ¶ 13 (emphasis added)), he does not cite any such texts with respect to the first opinion.  Thus, it is logical to conclude that his opinion is not based on such authorities.  (Even if it were, the application of such authorities to this case would have to be reliable, which Neofonie has not attempted to establish.)

This leaves the documents supposedly "produced in this case"[3] as the basis for Dr. Khoshgazaran's first opinion.  But Dr. Khoshgazaran's analysis in his own report involves only documents related to one feature—

---

[3] As explained in Part II.E, while these documents may have been produced to Dr. Khoshgazaran, many of them were not produced to Artissimo.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

this is what makes it fundamentally unreliable.  (*See* Dkt. 44-6 at 6.)  Even if Dr. Khoshgazaran also reviewed other materials as Neofonie contends, those materials are not the stated basis of his analysis.   Instead, Dr. Khoshgazaran walks through the development and history of one feature, in detail, and then extrapolates his conclusion to the project as a whole. (Dkt. 44-1 at ¶¶ 99–123.)   Lastly, even the minimal documents Dr. Khoshgazaran might cite, were not produced by Neofonie in this matter, despite repeated requests from Artissimo.    Contrary to Neofonie's suggestions, Artissimo *must* conclude that Dr. Khoshgazaran based his entire opinion on his analysis of that single feature based upon documents which were not produced.  Such a sample is not reliable as a matter of law, and the first opinion should be excluded for this reason alone.  (*See* Dkt. 44-6 at 6.)

### 2.    The First Opinion Is Not Helpful to the Trier of Fact.

Artissimo also argued that Dr. Khoshgazaran's first opinion should be excluded because, since the Agreement governs the meaning of the specialized terms at issue, Dr. Khoshgazaran's soliloquy of industry standards does not relate to any issue in the case.  (*See* Dkt. 44-6 at 6–7.)

In response, Neofonie argues that this testimony is helpful because members of the jury will likely be unfamiliar with the technical terms in the Agreement.  (Dkt. 52 at 10.)  Artissimo agrees that members of the jury will not be familiar with these terms.   That is why it is particularly important not to allow an "expert" to define the terms in a manner that is inconsistent with the Agreement.   The jury will be more likely to defer to an expert's inconsistent testimony on a subject that is not familiar to it. *See, e.g.*, *Hernandez v. City of Vancouver*, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009) (excluding opinion that was "unlikely to assist the jury

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

and runs the risk that the jury will pay unwarranted deference to [the expert's] expertise"); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 613 (E.D. Cal. 2009) (recognizing that "[j]uries, however, often defer to an expert's testimony without developing their own understanding of it"); *U.S.A. v. Cruikshank*, No. CR 04-836-GHK, 2006 WL 8439699, at *8 (C.D. Cal. May 5, 2006) ("Without sufficient evidence to apply [the expert's] testimony to the facts of the case, a jury may be inclined to fill the gap with speculation, undue deference to the expert's opinion, or by inferring that the subject of the expert's testimony is in fact the ultimate issue in the case.").

Moreover, Neofonie fails to respond to Artissimo's central argument: the Agreement explains *exactly* what is required for *this* MVP, and therefore no testimony as to the industry standard is needed. (*See* Dkt. 44-6 at 6–7.) Neofonie cites no authority for the idea that industry standards are relevant where the contract clearly defines the terms at issue, and such a position is inconsistent with California law. *See* Cal. Civ. Code §§ 1638, 1644. And Neofonie has provided no reason to believe that the contract does not adequately define the relevant terms. As such, industry usage is not admissible.

Neofonie contends that "Dr. Khoshgazaran's opinions regarding an MVP are consistent with the Phase II Agreement," on the basis that "[h]is analysis uses the features defined in the MVP to show how far . . . Defendant strayed during development." (Dkt. 52 at 10.) However, Neofonie makes this conclusory argument without addressing Dr. Khoshgazaran's stated opinion that the Agreement itself is not consistent with MVP and Agile development principles—an issue Artissimo pointed out in its Motion. (Dkt. 44-1 at ¶¶ 100, 104–06; Dkt. 44-6 at 7.) Dr.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

Khoshgazaran's own statements demonstrate that his definitions and opinions are *not* consistent with the Agreement, which apparently included more features than Dr. Khoshgazaran believes to be appropriate for an MVP. Such inconsistent opinions are confusing, not helpful, for the jury, and should be excluded under both Rule 403 and Rule 702.

**B.    Dr. Khoshgazaran's Second and Third Opinions Should Be Excluded as Moot.**

Dr. Khoshgazaran's expert report specifically states that he provided his second and third opinions to rebut Artissimo's assertions that "Neofonie failed to implement best practices" and "accrued unnecessary hours in developing the Website." (*Id.* at ¶¶ 124, 127.) Artissimo is not pursuing those theories at trial and therefore has argued that these rebuttal opinions should be excluded. (Dkt. 44-6 at 8–9.) Neofonie admits that Dr. Khoshgazaran's second and third opinions "contradict[ ]" allegations that Artissimo has abandoned, but contends that they are still admissible. (Dkt. 52 at 14.) As explained below, this is not the case.

*1.    The Second and Third Opinions Are Not Relevant for Another Purpose.*

"It is well established that expert testimony is not helpful if it simply addresses lay matters which the jury is capable of understanding and deciding without the expert's help." *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1136 (D. Or. 2010); *see also In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 961–62 (D. Ariz. 2007) ("[E]xpert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence."). Generally, an expert may not testify as to the meaning of a contract, although the expert may testify to the industry

**ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT**
4834-8807-0276

usage where there is a "need to clarify or define terms." *Pac. Fuel Co., LLC v. Shell Oil Co.*, 2008 WL 11336467, at *3 (C.D. Cal. Jan. 24, 2008) (internal quotation omitted).    Such a need exists where the contract is ambiguous.    *See* Cal. Civ. Code §§ 1638, 1644, 1645; *see also Driskill Agr. Servs. Inc. v. Dimare Fresh Inc.*, 2015 WL 464373, at *2 (D. Ariz. Feb. 4, 2015) (explaining that expert testimony as to industry custom is admissible "where, as here, a contractual term is ambiguous").

Neofonie argues that, despite Artissimo's abandonment of the contentions that the second and third opinions rebut, these opinions "are still relevant as they will demonstrate how the timeline evolved by the agreement of the parties and how this evolution affected the original preliminarily proposed time for delivery," as well as Neofonie's "effort to accommodate Defendant's unreasonable changes" that were beyond the scope of the Phase II Agreement.    (*Id.*)  Neofonie does not explain how Dr. Khoshgazaran's second and third opinions even relate to these issues.

But even if Neofonie explained this critical connection, Neofonie's argument would still be fatally flawed.    Based on Neofonie's own descriptions, the purpose of offering the second and third opinions is to "demonstrate" its factual evidence to the jury—not to offer a proper expert opinion that aids the jury in its evaluation of the evidence.    Indeed, Neofonie fails to explain why expert testimony is necessary to "demonstrate how the timeline evolved by the agreement of the parties" or how this affected the original deadline[4] for delivery.    Those are simply

---

[4] This appears to be a dispute of fact between the parties.    Neofonie treats the deadline in the Contract as a preliminary proposal; Artissimo believes it
*(footnote continued on following page ...)*

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

factual issues "within the knowledge and experience of ordinary lay people." *See In re Apollo Grp.*, 527 F. Supp. 2d at 961–62. There is no reason to believe a jury needs expert assistance in determining what the parties agreed to or how this affected the timeline of the Project.

Likewise, Neofonie does not explain why expert testimony is helpful *to the jury* in demonstrating Neofonie's "effort to accommodate Defendant's unreasonable changes" that were beyond the scope of the Phase II Agreement. Dr. Khoshgazaran does not have personal knowledge of Neofonie's efforts; thus, as explained further below, his testimony cannot be used to establish the facts of what efforts Neofonie made to accommodate Artissimo's requests for changes. And the Agreement itself determines whether changes are beyond its scope. No expert analysis is needed to determine the scope of a contract, at least when the terms are defined by the contract itself. *See Pac. Fuel Co.*, 2008 WL 11336467, at *3; *Driskill Agr. Servs. Inc.*, 2015 WL 464373, at *2. Thus, these opinions should be excluded.

> ## 2. *The Court Should Also Exclude These Opinions Because Neofonie Cannot Introduce Foundational Facts Through an Expert in Lieu of Lay Testimony.*

As stated in the Motion, much of Dr. Khoshgazaran's analysis for these two opinions consists of summarizing documentary evidence. (Dkt. 44-6 at 9 (citing Dkt. 44-1 at ¶¶ 125, 129, 132, 134, 139).) Indeed, Neofonie's Response correctly describes "Dr. Khoshgazaran's analysis" as

*(... footnote continued from previous page)*
was, in fact, a deadline for performance that could only be extended through agreement of the parties.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

"detail[ing]" the evidence he reviewed.  (Dkt. 52 at 14.)  Due to this excessive summarizing, Artissimo therefore moved that, if Dr. Khoshgazaran was permitted to testify to his second and third opinions, the Court not allow Dr. Khoshgazaran to testify to these facts in lieu of presenting witnesses with firsthand knowledge.  (Dkt. 44-6 at 9.)  In response, Neofonie argues that "an expert witness is permitted wide latitude . . . to offer opinions, including those that are not based on firsthand knowledge or observation."  (Dkt. 52 at 11.)

Neofonie's argument ignores the point.  Artissimo asked that Dr. Khoshgazaran not be permitted "to testify to any facts that Neofonie has not established through the testimony of other witnesses."  (Dkt. 44-6 at 9.)  While Dr. Khoshgazaran can *base* his opinions on things other than firsthand knowledge, he is not competent to introduce such factual assertions into evidence in the first instance.  (*See id.* (citing authorities).)

Tellingly, Neofonie's Response does not make the obvious concession to resolve this dispute: Neofonie does not commit to establish the foundational facts through its own employees (or Artissimo's employees).  This suggests that Neofonie does, in fact, intend to introduce the facts through Dr. Khoshgazaran himself, despite his lack of personal knowledge.  In the interest of efficiency and avoiding the prejudice of the jury hearing an opinion that lacks appropriate foundation, the Court should prohibit this improper practice prior to trial.  *See, e.g.*, *Johnson v. Gen. Mills Inc.*, 2012 WL 13015023, at *1 (C.D. Cal. May 7, 2012) (motions *in limine* avoid "the futile attempt to unring the bell") (internal quotation omitted).

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

## C. Dr. Khoshgazaran's Fourth Opinion Should Be Excluded Because It Is Neither Reliable Nor Helpful.

As explained in the Motion, Dr. Khoshgazaran's "fourth opinion" contains two separate opinions: (1) Artissimo "did not accurately represent the severity of several bugs that were discovered in the course of developing the Website as well as [Neofonie's] approach in addressing or resolving such bugs" (Dkt. 44-1 at ¶ 93) and (2) "[a] delay of about a month is very common for a project of this magnitude." (*id.* at ¶ 151.) Artissimo responds to Neofonie's arguments for each separately below.

### 1. The Opinion as to Whether Artissimo Accurately Represented the Severity of Bugs is Not Reliable or Helpful.

Neofonie declares that Dr. Khoshgazaran's "fourth opinion" is not "an opinion as to the workability of the MVP delivered by Neofonie." (Dkt. 52 at 15.) But whether the bugs were severe enough to impair the function of the website is simply another way of stating whether the website was functional. Neofonie appears to agree that testing would be necessary for Dr. Khoshgazaran to offer an opinion as to whether the website was "workable" and that he did not perform such testing. (*Id.* at 11–12.) As there is no meaningful difference between these conclusions, and as Neofonie concedes that Dr. Khoshgazaran did not test the website, his fourth opinion should therefore be excluded on this basis alone.

Moreover, Neofonie contends that Dr. Khoshgazaran's fourth opinion is about "what conclusions are consistent with the sources of information reviewed": relevant agreements, discovery responses, and

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

communications between the parties.[5]   (Dkt. 52 at 12.)   Although Neofonie contends otherwise, this is a simple credibility determination.   By Neofonie's own admission, Dr. Khoshgazaran has relied exclusively on the communications and agreements between the parties; thus, he is doing nothing more than determining who he believes has accurately represented the severity of the bugs and Neofonie's responses thereto.   *Cf. Actuate Corp. v. Aon Corp.*, 2012 WL 2285187, at *1 (N.D. Cal. June 18, 2012) ("An expert cannot tell the jury whose version of events is truthful.").   The fact that Dr. Khoshgazaran "quotes verbatim" (Dkt. 52 at 12), selectively, from the documents does not change the nature of his analysis.   Because this testimony cannot help the jury, it should be excluded.

### 2.   *The Opinion as to Whether a Delay of One Month Is Common Is Not Helpful.*

Neofonie's argument as to the admissibility of Dr. Khoshgazaran's opinion that a delay of about a month is common does not make sense. (Dkt. 52 at 12–13.)   Artissimo's reference in its Counterclaim to a delay of approximately a year refers to the effect of being forced to abandon the project with Neofonie and start anew—not that Neofonie itself delivered the project a year late.   Dr. Khoshgazaran does not offer an opinion as to how long it would have reasonably taken Artissimo to start over, nor could he reliably testify to Artissimo's business realities.   Thus, this opinion cannot be admissible on that basis.

---

[5] As stated in the prior section, it is not proper for Dr. Khoshgazaran himself to introduce these foundational facts.   To the extent that Neofonie does not establish the foundational facts through the testimony of appropriate witnesses with personal knowledge, this opinion should be excluded at trial.

Similarly, Neofonie's secondary argument demonstrates the problem with this opinion.  Neofonie argues that the opinion is admissible to show "why the timeline was preliminary, that it was not unusual for the launch date to be put back, and that a launch date put back by one month or so is common therefore may not have a material breach . . . ." (*Id.* at 13.)  But the Contract between the parties—*not* the industry standard—determines whether a timeline is preliminary or constitutes a final deadline and whether failure to meet that deadline is a material breach.  *See supra* Part II.B.1.  Neofonie has cited no authority for the proposition that it should be allowed to introduce "expert" testimony that the parties' written Agreement directly contradicts.  Neofonie's request is directly contrary to well-established law.

## D.  Dr. Khoshgazaran's Fifth Opinion Should Be Excluded Because It Is Not Helpful.

In its Motion, Artissimo explained that Dr. Khoshgazaran's "analysis" with respect to his fifth opinion "is essentially a summary of the documentary evidence in this case presented in a light favorable to Neofonie" and, because such analysis is within the capability of the jury, this is not proper expert testimony under Rule 702. (Dkt. 44-6 at 11–12.) Additionally. Artissimo asserted that, due to the risk of the jury weighing Dr. Khoshgazaran's opinion disproportionately simply because he is labeled as an expert, any limited probative value of introducing this opinion was far outweighed by the prejudice to Artissimo, and the evidence should therefore be excluded under Rule 404. (*Id.* at 12.)  In response, Neofonie argues that "[t]he purpose of Dr. Khoshgazaran's fifth opinion is to assist the jury in understanding how the delays occurred in this Project which Defendant is attempting to misrepresent" and "[r]evealing the facts that he

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

relied on in forming his opinions is not a basis to exclude his testimony." (Dkt. 52 at 13.)

Neofonie misses the point. The problem is not that Dr. Khoshgazaran "reveal[s] the facts that he relied on." The problem is that Dr. Khoshgazaran does not have the capacity to establish those facts because he lacks personal knowledge (*see supra* Part II.B.2) and his analysis consists of nothing more than his personal interpretation of that evidence. Neofonie does not explain *how* Dr. Khoshgazaran's expertise assists the jury in "understanding how the delays occurred" or even why expert testimony is, in general, needed to understand the concept of delays in a project. Indeed, even the language that Neofonie uses—"which Defendant is attempting to misrepresent" (Dkt. 52 at 13)—suggests that this issue is a credibility determination for the jury. Neofonie has failed to meet its burden of establishing the admissibility of Dr. Khoshgazaran's testimony, and the fifth opinion should therefore be excluded.

**E.      Neofonie Should Not Be Permitted to Rely on Documents It Has Not Produced.**

In its primary brief, Artissimo argued that "Neofonie should not be permitted to rely upon, or introduce expert testimony that relies upon, documents that it has not even produced in this litigation." (Dkt. 44-6 at 13.) The proposition is not a controversial one; parties are, of course, regularly prohibited from relying on documents that they have not been produced in discovery. (*See id.*)

In response, Neofonie does not argue that it provided all of the documents that its expert relied upon or even that Artissimo failed to request such documents. Instead, Neofonie makes an extraordinary argument: that it is not required to produce the documents it provided to its

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

expert, on the basis that Artissimo could have asked the expert for such documents.[6]   That simply is not the case under the Federal Rules of Civil Procedure.  As explained below, Artissimo requested these documents and Neofonie was obligated to produce them, and Artissimo does not have the requested documents.   Neofonie should therefore be prohibited from relying on documents it has refused to produce.

### 1.   *Neofonie Had an Obligation to Produce Responsive Documents in Its Possession, Custody, or Control.*

Rule 34(a) allows a party to obtain "items in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  "[F]ederal courts have consistently held that documents are deemed to be within a party's 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand."  *Bail Busters, Inc. v. Sterling*, 2011 WL 13269703, at *3 (C.D. Cal. Oct. 13, 2011) (internal quotations omitted).  "Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery, and, based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control."  *Id.* (internal quotations omitted).

Neofonie has cited no authority for the proposition that documents

---

[6]  Neofonie also argues that Artissimo could have deposed Dr. Khoshgazaran, but did not. (Dkt. 52 at 14.)  This is clearly a red herring. A party is not required to conduct a deposition of an expert to receive documents in possession of the other party that relate to that expert.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

are exempt from this general principle of federal procedure simply because they pertain to an expert.  In fact, "[a] party may use Rule 34 to seek discovery concerning expert opinions in addition to the disclosures required by Rule 26(a)."  *Santos v. TWC Admin. LLC*, 2014 WL 12558009, at *4 n.36 (C.D. Cal. Aug. 4, 2014); *see also Silgan Containers v. Nat'l Union Fire Ins.*, 2011 WL 1058861, at *6 (N.D. Cal. Mar. 23, 2011) (requiring a party to turn over information about an expert that is in its possession and "strongly encourag[ing]" it to obtain any information not in its possession from its expert).

Artissimo's Motion made clear that the documents at issue here were properly requested in discovery. (Dkt. 44-6 at 12–13.)  Neofonie does not dispute that they were requested and does not deny that it has possession, custody, and/or control of the documents.  Moreover, there can be no doubt that the documents are responsive—Neofonie gave the documents to its expert to consider and rely upon in formulating his expert opinion.  Despite all this, Neofonie has refused to produce these very documents to Artissimo.

Of course, to the extent that Neofonie did not have possession, custody, or control of *certain* documents, it could (and should) have stated that.  It did not do so.  Although Neofonie now attempts to suggest that only the expert could identify *some* responsive documents (Dkt. 52 at 14), that argument makes absolutely no sense with respect to many of the documents requested.  For example, Artissimo asked for the documents that Neofonie and its counsel gave to its expert.  (Dkt. 44-6 at 13 (citing Dkt. 44-3 at 7).)  And the documents that are the heart of this issue—the documents from JIRA—are documents from Neofonie's own system. It is therefore clear that Neofonie had possession of the responsive documents

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

and had an absolute obligation to produce the same.  For Neofonie to simply argue that Artissimo should have served a third-party subpoena on its expert is directly contrary to the Federal Rues of Civil Procedure.

Notably, Neofonie would have been required to produce these documents even if it had not obtained an expert.  These documents constitute communications between the parties that were the subject of Artissimo's First Set of Requests for Production of Documents and Things, served in January 2018.  (*See* Ex. F at 7, 9–10 (Request Nos. 3, 4, 9, 13, and 14); Ex. H [Ingram Decl.] at ¶¶ 3–4.)  When Artissimo received the Expert Report, it became clear that not all such documents had been produced in response to the First Set of Requests.  Thus, in case Neofonie's obligation was not clear to Neofonie, Artissimo served more specific discovery requests to avoid all doubt.  (Dkt. 44-3 [Mot. Ex. C] at 7, 9.)

As a final matter, although this argument is not made in the Response, Neofonie's counsel states that "Defendant also requested very late in the discovery process that Neofonie produce the JIRA tickets reviewed by its expert, Dr. Khoshgazaran, in preparing his Report" and goes on to explain why he believes Artissimo's discovery requests were procedurally improper.  (Dkt. 52-1 at ¶ 7.)  Counsel's use of his declaration for argument is not permissible under Local Rules, which require that "[d]eclarations shall contain only factual, evidentiary matter . . . ."  L.R. 7-7.  Artissimo believes argument made in the declaration should be disregarded.  To the extent that the Court nevertheless sees fit to consider these allegations, Artissimo notes that its Second Set of Requests were served timely—approximately one month after Artissimo received the Expert Report (which required it to re-review the documents in its possession) and more than one month prior to the close of discovery.  The

16                           8:17-cv-00772

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

fact that these Requests were served near the deadline does not relieve Neofonie of its obligation to produce responsive documents.

### 2. *Artissimo Does Not Have, or Have Access to, the Responsive Documents.*

In addition to arguing that it is not obliged to produce responsive documents, Neofonie argues that Artissimo already has the documents or has the ability to retrieve them. This is not the case.

First, Artissimo does not have access to JIRA. Neofonie asserts that Artissimo "has (or should have) access to all the JIRA tickets created during the development of the MVP as it used JIRA to communicate with Neofonie." (Dkt. 52 at 14.) Neofonie further asserts that: "In good faith and without having any obligation to do so, Neofonie has reminded Defendant that it has access to JIRA and can print out any tickets identified by Dr. Khoshgazaran in his report." (*Id.* at 15.) Artissimo notes that this "reminder" was given on the same day Neofonie filed its Response: December 24, 2018. (Ex. G [Dec. 24, 2018 email from Neofonie's counsel]; Ex. H [Ingram Decl.] at ¶¶ 19–20.) When Artissimo and its counsel attempted to access JIRA on December 26, 2018, they were unable to do so and received a message that the "server IP address could not be found." (*Id.* at ¶¶ 22–25.) Thus, Artissimo cannot "log on to JIRA and download each and every ticket to which Dr. Khoshgazaran refers in his Report." (Dkt. 52 at ¶ 14.) And even if it could, such access would not relieve Neofonie of its obligation to identify the documents that it has provided to its expert.[7]

---

[7] Notably, Neofonie's responses to Artissimo's Second Set of Requests for Production of Documents and Things (Dkt. 44-4 [Mot. Ex. D]) neither

*(footnote continued on following page ...)*

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

Second, Neofonie has not produced, and has not argued that it has produced, all of the responsive documents.   Neofonie argues that it "produced physical copies of the JIRA tickets which were contained in the project folders and a breakdown of every JIRA ticket created during the project." (Dkt. 52 at 14.)  A careful read of this assertion reveals that it is *not* an assertion that Neofonie actually produced *all* of the responsive documents.   Instead, it is an assertion it produced some responsive documents (presumably in response to the First Set of Requests for Production of Documents and Things or Artissimo's search terms, since Neofonie has not produced documents since Artissimo served its Second Set of Requests (Ex. H [Ingram Decl.] at ¶¶ 12, 30).).   Neofonie appears to assert that it produced an unknown number of tickets that happened to be stored in a particular location and a spreadsheet summarizing the tickets. (Dkt. 52 at 14.)  Neofonie does not bother to identify, by Bates label or otherwise, what documents it believes fit this description. (*See id.*)  Based on Neofonie's representations, Artissimo's counsel conducted yet another search and confirmed that responsive documents, relied upon by the expert, were not produced by Neofonie.  (Ex. H [Ingram Decl.] at ¶¶ 26–28.)

The   fact   that   Neofonie   produced   some   documents—of   its choosing—does not satisfy its obligation to produce the remainder.   As explained above, Artissimo is entitled to *all* of the documents responsive to

*(… footnote continued from previous page)*
assert that Artissimo already has these documents in its possession nor mention access to JIRA.  If this were the basis of Neofonie's refusal to produce documents, disclosure of this fact would be required by Federal Rule of Civil Procedure 34.  It is thus clear that this was not a basis for Neofonie's refusal to produce documents.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

its Second Set of Requests, particularly those that Neofonie provided to its expert.

* * *

Based on Neofonie's Response, it appears that Neofonie no longer intends to fulfill its undisputed[8] commitment to produce responsive documents. Because Neofonie has failed to produce responsive documents in accordance with Rule 26 of the Federal Rules of Civil Procedure, Neofonie should be precluded from relying on such documents at trial.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the proposed expert testimony of Ali Khoshgazaran, Ph.D., should be excluded or, at the least, limited to ensure relevance and reliability and to prevent reliance on documents that have not been produced in the litigation.

Dated: December 27, 2018

---

[8] Artissimo asserted this agreement in its Motion. (Doc. 44-5 at ¶ 13; Doc. 44-6 at 13.) Neofonie's counsel does not refute that he made such a commitment, and this fact is thus undisputed. Artissimo relied on this representation in not seeking the Court's relief prior to filing the Motion.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276

1

Respectfully submitted,

2

3

BY:   */s/ Peter C. Sales*

4

Roger G. Jones (TN Bar No. 11550)

Peter C. Sales (TN Bar No. 25067)

5

Kimberly M. Ingram (SBN 305497)

6

1600 Division Street, Suite 700

Nashville, Tennessee 37203

7

Telephone: (615) 252-2365

8

Facsimile:  (615) 252/6365

rjones@bradley.com

9

psales@bradley.com

10

kingram@bradley.com

11

*Attorneys for Defendant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT

4834-8807-0276

## CERTIFICATE OF SERVICE

I, Kimberly M. Ingram, do hereby certify that on this 27th day of December, 2018, a true and correct copy of the foregoing document is being forwarded to the individual listed below in the manner indicated:

**Via CM/ECF System**
Sacha V. Emanuel, Esquire
Raphael B. Emanuel, Esquire
Emanuel Law
1888 Century Park East, Suite 1500
Los Angeles, California 90067

*/s/ Kimberly M. Ingram*
Kimberly M. Ingram, Esq.

ARTISSIMO'S REPLY SUPPORTING EXCLUSION OF EXPERT
4834-8807-0276