BRADLEY ARANT BOULT
CUMMINGS LLP
Roger G. Jones (*pro hac vice*)
rjones@bradley.com
Peter C. Sales (*pro hac vice*)
psales@bradley.com
Kimberly M. Ingram (SBN 305497)
kingram@bradley.com
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 252-2365
Facsimile: (615) 252-6365

*Attorneys for Defendant*
*Artissimo Designs LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEOFONIE GMBH, a German corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>ARTISSIMO DESIGNS LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.: 8:17-cv-00772 CJC (JDEx)<br><br>DEFENDANT/COUNTER-PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION *IN LIMINE* #1 TO EXCLUDE EXPERT TESTIMONY OF ALI KHOSHGOZARAN, PH.D |
| ARTISSIMO DESIGNS LLC,<br><br>        Counter-Plaintiff.<br><br>vs.<br><br>NEOFONIE GMBH<br><br>        Counter-Defendant. | Hearing Date: October 7, 2019<br>Hearing Time: 3:00pm<br>Courtroom: 7C<br><br>The Honorable Cormac J. Carney |

Defendant/Counter-Plaintiff Artissimo Designs LLC ("Artissimo") respectfully submits this Memorandum of Points and Authorities under L.R. 7-5 in support of its Motion to Exclude Expert Testimony of Ali Khoshgozaran, Ph.D., proposed expert witness of Plaintiff/Counter-Defendant Neofonie GMBH ("Neofonie"), on the basis that his opinions are not reliable, not helpful to the trier of fact, and/or are based on documents that Neofonie has not produced, as explained further below.

## I.   **INTRODUCTION**

Dr. Khoshgozaran's report (Ex. A) lists five essential opinions about the subject matter of this case.  However, these opinions should not be presented to the jury for the reasons that follow.

***First***, Dr. Khoshgozaran's opinion that Artissimo "failed to conform to important principles of Agile software development and MVP launch" is neither reliable nor helpful to the trier of fact.  Dr. Khoshgozaran formed this opinion by analyzing *one* out of 46 features required for the Project—an inherently unreliable methodology, as such a small sample size could not generate a reliable conclusion.   Additionally, Dr. Khoshgozaran explains how the design and progress of this project failed to conform to the "industry standard" definition of a minimum viable product ("MVP"). But the question here is not whether the project conformed to some general idea of an MVP, but rather whether the project conformed to the contractual definition for *this* MVP.  As a matter of law, the contractual definition controls over the industry standard, and a discussion of "industry standard" is therefore immaterial and likely to confuse, not assist, the jury. Moreover, Dr. Khoshgozaran's analysis does not support his conclusion. Dr. Khoshgozaran explains that the agreement itself does not comport with industry standards, but that does not lead to the conclusion that Artissimo "failed to conform" to industry standards.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

**Second**, Dr. Khoshgozaran's opinions as to Neofonie's use of best practices and implementation of out-of-the box solutions vs. customization should be excluded because they are not relevant. These opinions are expressly given to rebut Artissimo's assertions that Neofonie did not use industry best practices and did not implement out-of-the-box solutions where available. But Artissimo is not pursuing these theories at trial and this rebuttal testimony therefore is not relevant.

**Third**, Dr. Khoshgozaran's opinion that the bugs present in the website were not as severe as Artissimo portrayed should be excluded because it is not reliable, does not assist the jury, and the risk of prejudice significantly outweighs the probative value of his opinions. Dr. Khoshgozaran failed to test the website and therefore cannot reliably opine as to the severity of the deficiencies Artissimo identified. Instead of testing the site, Dr. Khoshgozaran weighed the credibility of others' opinions of the severity of the bugs, as laid out in documentary evidence. Such assessments are the province of the jury, and an expert's testimony on this matter is not helpful. Worse yet, in making this assessment, Dr. Khoshgozaran cites only eleven out of at least 398 tickets related to the launch of the MVP in making this determination. Additionally, Dr. Khoshgozaran's related opinion that a delay of about a month is "normal" for this type of project does not address whether Neofonie materially breached *this* agreement by failing to complete the Project by the agreed-upon deadline. As a result, this opinion is also likely to confuse and unduly prejudice the jury.

**Fourth**, Dr. Khoshgozaran's opinion that Artissimo caused Neofonie's inability to complete the project should be excluded because it is not based on any expertise. Dr. Khoshgozaran's analysis is a summary of the documentary evidence presented in a light favorable to Neofonie.

The jury itself can make such a determination without any aid from an expert.

**Fifth**, Neofonie should not be able to present any opinion of Dr. Khoshgozaran that relies upon documents that it has not produced to Artissimo, particularly since they were specifically requested in discovery.

For these reasons and as explained in more detail below, Artissimo asks that the proposed expert testimony of Ali Khoshgozaran, Ph.D., be excluded or, at the least, limited.

## II.   BACKGROUND

Artissimo and Neofonie entered into a written agreement under which Neofonie would develop a custom business-to-consumer website for Artissimo to use in selling a new line of high-end art products (the "Project"). The parties first entered into a contract for the development of a website concept and design for the Website. Upon completion of the design, on May 23, 2016, Artissimo and Neofonie executed a contract (the "Agreement") for Neofonie to create an MVP for the Website that would be usable for Artissimo's intended business purpose. (Ex. B.)

Neofonie understood that, due to the seasonal nature of Artissimo's business model and intended business purpose, the website needed to be available for the 2016 holiday season. (*See* Ex. C [Excerpted Tr. of Dep. of Ender Oezguer, Rule 30(b)(6) representative of Neofonie] at 43:23–44:13 (agreeing that "Neofonie knew that Artissimo needed the product in order to make the holiday season"). Accordingly, the Agreement provided that the artdesigns.com launch would be September 19, 2016. (Ex. B at 4.) But due to ongoing problems with completing the development of the website, the launch date was moved three times, eventually to the end of October. (Ex. C at 38:9–40:3.)

The Agreement required that Neofonie produce to Artissimo several "deliverables," including a "Go live / Launch of artdesigns.com MVP," or live website, by the agreed date. (Ex. B at 7, 11.) As Neofonie's corporate representative acknowledged, the Agreement provided that the MVP would "contain the minimum features for . . . [artdesign.com]'s business model." (Ex. C at 32:7–13; *see also* Ex. B at 3 ("This MVP shall contain the minimum feature set for the artdesigns.com business model[ ].") Neofonie had gained an understanding of that model during the first phase of the Project. (Ex. C at 26:23–29:20.) Neofonie's representative also agreed that an MVP would not qualify as "delivered" if it was unable to be tested or used by the consumer and failed in its stated purpose. (*Id.* at 37:3–19.)

However, when it came time to test the website, Artissimo discovered multiple deficiencies relating to the basic usability of the website for its business model. For example, Neofonie's representative acknowledged that the MVP would be required to calculate taxes in order for Artissimo to sell to individuals in different jurisdictions in the U.S., Canada, and Mexico. (*See id.* at 28:14–29:20, 34:3–19.) Despite this understanding, the MVP that Neofonie provided only estimated taxes; it did not calculate the taxes based on jurisdiction, as required by law. (Ex. D at 111:18–112:7.)

Neofonie attempted to correct these problems, but even after the extensions, the MVP was not ready to launch. Neofonie's representative also agreed that the MVP was never launched due to the existence of unresolved problems with the website:

> Q.    You agree that the MVP never launched?
> A.    Yes.

Q.     And one of the reasons why it didn't launch is because there were still problems that hadn't been worked out; isn't that correct?

A.     Yes.

(Ex. C at 63:7–12; *see also id.* at 64:14–22 ("Q. And it did not launch because there were blockers or problems that were preventing it [the MVP] from being launched.   A. Yes.   Q. And, therefore, because of those blockers or those problems, the MVP was never ready to be put on the production system?   A. Never would be ready, as a conclusion of that, yes.").

Neofonie sued Artissimo for breach of contract and other quasi-contractual claims on May 2, 2017.  Artissimo filed a counterclaim for breach of contract and other quasi-contractual claims on July 5, 2017.  On September 18, 2018, Neofonie disclosed the expert report of Dr. Khoshgozaran, which contained five opinions concerning Neofonie's performance in the Project and Artissimo's contributions thereto.  (Ex. A.)  As explained below, these opinions should not be presented to the jury.

### III.   <u>STANDARD OF REVIEW</u>

Rule 702 of the Federal Rules of Civil Procedure provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" four conditions are met.  First, "the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702(a).  Second, the expert's testimony must be "based on sufficient facts or data." Fed. R. Civ. P. 702(b).  Third, the testimony must be "the product of reliable principles and methods." Fed. R. Civ. P. 702(c).  Fourth, the expert must have "reliably applied the principles and methods to the facts of the case."

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

Fed. R. Civ. P. 702(d).   Additionally, the court has discretion to exclude expert testimony "when its probative value is substantially outweighed by the danger of misleading the jury or confusing the issues." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (citing Fed. R. Civ. P. 403).

## IV.   <u>ARGUMENT</u>

Under Rule 702, the trial court has a "gatekeeping obligation" to determine that any expert testimony is both relevant and reliable before the jury hears it.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Thus, "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific [or technical] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  The court should consider "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.  "Ordinarily, a key question to be answered . . . will be whether it can be (and has been) tested." *Id.* at 593.

Here, Dr. Khoshgozaran's proposed testimony suffers from fundamental flaws that make it inappropriate for consideration by the jury. Artissimo does not question Dr. Khoshgozaran's general qualifications to testify about the implementation of a business-to-consumer website. However, here, Dr. Khoshgozaran's proposed testimony addresses facts that are not in issue (*e.g.*, the industry standard for an MVP, a term that is defined by the Agreement), and such testimony is not "helpful to the trier of fact."   Additionally, Dr. Khoshgozaran's opinions as to whether *this* website was or was not functioning properly are not reliable because Dr. Khoshgozaran did not test the website.  And to the extent that Neofonie

seeks to use Dr. Khoshgozaran to introduce testimony as to facts, such facts must be established by witnesses who have personal knowledge of such facts. Artissimo explains below how these issues impact each of Dr. Khoshgozaran's five proffered opinions. Artissimo further explains how Dr. Khoshgozaran's testimony should be excluded to the extent that Neofonie has not produced the documents on which such testimony relies.

## A. Dr. Khoshgozaran's First Opinion Should Be Excluded Because It Is Neither Helpful Nor Reliable.

Dr. Khoshgozaran's first opinion is that Artissimo "failed to conform to important principles of Agile software development and MVP launch," resulting in "unnecessary delays in development of the Website." (Ex. A at ¶ 90.) This testimony should not be presented to the jury because it is not reliable and because his analysis reveals that it does not relate to any issue in dispute in the case.

As a threshold matter, Dr. Khoshgozaran bases his opinion of Artissimo's approach to the Project on *one* out of 46[1] features required in the Agreement. (*See* Ex. A at ¶¶ 100–120 (discussing newsletter feature); Ex. B [Agreement] at 9–10 (listing features required to be delivered).) It simply is not reliable to base a conclusion about Artissimo's approach to the entire project on its approach to one feature.[2] *Cf. In re Countrywide*

---

[1] Dr. Khoshgozaran himself counted "63 features and sub-features" as being required for the MVP (Ex. A at ¶ 96), making his decision to analyze the development of only one such feature even more perplexing.

[2] Although Dr. Khoshgozaran states that he "was able to trace similar issues in other product features such as My Collections" (Ex. A at ¶ 121), he provides no further explanation of that statement. Therefore, he has presented absolutely no analysis to support that conclusion. In any event, a
*(footnote continued on following page ...)*

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

*Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1033 (C.D. Cal. 2013) ("In order to draw reliable conclusions . . . based on a statistical sample, the sample size must be large enough to support those conclusions."). Moreover, Dr. Khoshgozaran inexplicably chose a feature that is not in dispute in this litigation; Artissimo has not claimed that this is one of the features that blocked the go-live. As a result of these fundamental flaws, Dr. Khoshgozaran's first opinion is unreliable as a matter of law.

Additionally, Dr. Khoshgozaran's opinion is not helpful to the trier of fact because his analysis "does not relate to any issue in the case." *Daubert*, 509 U.S. at 591. Dr. Khoshgozaran's opinion relies on the industry standard for an MVP. (*E.g.*, Ex. A at ¶¶ 57–64, 96.) If the Agreement did not define "MVP," such testimony might be helpful. However, the Agreement explains *exactly* what is required for *this* MVP. (Ex. B at 9–10.) Giving the jury a definition of "MVP" that is inconsistent with the definition provided in the Agreement is not relevant or helpful to the trier of fact; it is confusing.

And there is no question that Dr. Khoshgozaran's definition of an MVP is inconsistent with the definition in the Agreement. Dr. Khoshgozaran opines that the Agreement itself is not consistent with MVP and Agile development principles—specifically, that the one feature he analyzes is not an MVP feature and "what was scoped out" does not comport with standard MVP thinking. (Ex. A at ¶¶ 100, 104–06.) As a matter of law, the Agreement definition must control over an inconsistent

---

*(… footnote continued from previous page)*
demonstration of issues with two (out of 46) features would not greatly improve the reliability of the opinion.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

industry definition.  *See* Cal. Civ. Code § 1638.  Thus, the expert testimony is not relevant under Rule 702.

The same conclusion—that the Agreement itself is the problem—demonstrates that Dr. Khoshgozaran's opinion is not reliable for an additional reason.  Dr. Khoshgozaran concludes that Artissimo alone did not follow an important principles of Agile software development and MVP launch.  But under his own analysis, the *Agreement* was the source of the inconsistency with MVP principles.  As both parties (including Neofonie, the party with expertise in website development) unquestionably agreed to the scope of the Agreement, this does not support a conclusion that *Artissimo* failed to follow correct development principles.  Dr. Khoshgozaran's opinion should be excluded for this additional reason. *See, e.g.*, *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (noting that "[w]hether the methodology or technique the expert uses 'fits' the conclusions" is a "preliminary question[ ] of law" to be determined "by the trial judge").

In short, testimony as to whether the agreed-upon features are consistent with the industry standard for an MVP is not helpful to the jury and should be excluded under Rule 702.  Indeed, it is likely to confuse the jury by presenting two sets of MVP requirements, one of which did not govern this relationship.  As a result, this opinion should also be excluded under Rule 403.  Artissimo therefore moves that the first opinion be excluded from trial.

**B.    Dr. Khoshgozaran's Second and Third Opinions Should Be Excluded Because They Are Not Relevant.**

Dr. Khoshgozaran's second opinion is that Neofonie "chose a widely practiced software development process and implemented it correctly in developing the Website."  (Ex. A at ¶ 91.)  His third opinion is that

Neofonie struck "a balance between integrating third-party and existing software components in developing them from scratch" and Neofonie's "decision to integrate out-of-the-box software components when applicable and to avoid excessive use of such components were justified." (*Id.* at ¶ 92.) Dr. Khoshgozaran explains that he provides these opinions to rebut Artissimo's assertions that "Neofonie failed to implement best practices" and undertook unnecessary customizations. (*Id.* at ¶¶ 124, 127.) However, Artissimo does not plan to pursue these theories at trial.

Artissimo's theory at trial is simple: Neofonie contracted to deliver an MVP with certain features by a particular date and, despite multiple extensions, it failed to do so. Neofonie also told Artissimo that it would require additional payment to complete the Project and would again be changing the Project Manager. Given Neofonie's failure to meet the agreed deadline and its repudiation of performance, Artissimo gave notice that it was ending the relationship.

This theory does not involve whether Neofonie implemented best practices or accrued unnecessary development hours; they depend on whether Neofonie failed to do what it promised to do. Thus, Dr. Khoshgozaran's second and third opinions are expressly framed as being responsive to arguments that Artissimo is not making at trial. Such testimony is not relevant or helpful to the jury under Rule 702, and Artissimo asks that it be excluded.

If the Court nevertheless allows Dr. Khoshgozaran to testify to these opinions, Artissimo asks that Dr. Khoshgozaran not be permitted to testify in the first instance to facts of which he has no personal knowledge. Much of Dr. Khoshgozaran's analysis for these two opinions consists of him summarizing documentary evidence. (Ex. A at ¶¶ 125, 129, 132, 134, 139.) While an expert may properly <u>rely</u> on such evidence in formulating

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

his opinions, individuals with personal knowledge, not the expert, must introduce those facts into evidence. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5914033, at *1 (N.D. Cal. Nov. 28, 2011) ("Expert reliance on foundational facts supplied by [a party] can be proper *so long as* [*the party's employees] testify to the foundational facts with firsthand knowledge*." (emphasis added)).   This is particularly important because, as the Ninth Circuit has recognized in the context of expert summary witnesses, "[p]ermitting an 'expert' witness to summarize testimonial evidence lends the witness' credibility to that evidence." *United States v. Baker*, 10 F.3d 1374, 1412 (9th Cir. 1993), *as amended* (Dec. 13, 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000).  Artissimo therefore asks that the Court not allow Dr. Khoshgozaran to testify to any facts that Neofonie has not established through the testimony of other witnesses and place reasonable limits on Dr. Khoshgozaran's summaries of testimony by other witnesses.

**C.    Dr. Khoshgozaran's Fourth Opinion Should Be Excluded Because It Is Neither Reliable Nor Helpful.**

Dr. Khoshgozaran's fourth opinion is that Artissimo "did not accurately represent the severity of several bugs that were discovered in the course of developing the Website as well as [Neofonie's] approach in addressing or resolving such bugs."  (Ex. A at ¶ 93.)  To determine the severity of the bugs, Dr. Khoshgozaran relies upon evidence of communications between the parties.  (*Id.* at ¶¶ 152, 155–60.)

As a threshold matter, like for the two prior opinions, it is not proper for Dr. Khoshgozaran to summarize the documentary evidence in lieu of testimony from witnesses with personal knowledge of the facts.  Thus, if Neofonie does not present witnesses with personal knowledge to establish

these facts, Artissimo moves that Dr. Khoshgozaran's testimony on this issue be excluded.

But even assuming that Neofonie meets this threshold requirement, Dr. Khoshgozaran does not have a reliable basis to testify that Artissimo "did not accurately represent the severity of several bugs that were discovered in the course of developing the Website." (Ex. A at ¶ 93.) "Proposed testimony must be supported by appropriate validation" and "[o]rdinarily, a key question to be answered . . . will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 590. If the opinion was not appropriately validated, it should be excluded as unreliable. *See id.*

Here, Dr. Khoshgozaran could have tested the website to accurately determine the severity of the bugs.[3] His report acknowledges he failed to do so. He states: "I did not analyze artifacts such as actual source code or a live version of the Website that would allow me to form an opinion about the quality of delivered features at the end of the relationship between the two parties." (Ex. A at n.34.) Thus, Dr. Khoshgozaran *admits* that he does not have adequate information to evaluate the functionality of the "delivered features" but purports to do exactly that. And if he had no ability to access the delivered features, he also had no ability to determine which features were, in fact, delivered. In other words, Dr. Khoshgozaran concludes that Artissimo exaggerated the severity of the bugs in a website without having tested the functionality of the site about which he attempts

---

[3] This assumes the cooperation of Neofonie. Dr. Khoshgozaran's report suggests that Neofonie did not provide that support, as he states: "I am willing to amend or supplement this report if such material is made available to me." (Ex. A at n.34.) It was Neofonie's responsibility to provide the information needed for its expert to make a reliable analysis.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

to opine.  Since Dr. Khoshgozaran himself has conceded that his opinion is not reliable, it should be excluded.

Moreover, instead of testing the website to determine the severity of the bugs, Dr. Khoshgozaran relied upon only a limited universe of documents showing others' opinions of the severity of the bugs.  Dr. Khoshgozaran's report explains that the JIRA tickets are, *inter alia*, "created to report a bug identified in the software."  (Ex. A at ¶ 47.)  But Dr. Khoshgozaran does not adequately analyze those tickets.

On April 17, 2019, Neofonie produced 589 JIRA tickets to Artissimo.  (Ex. E at ¶ 23.)  Of these, 400 were marked "MVP Launch" and thirty (30) were marked "Public Launch Blocker."[4]  (*Id.* at ¶ 25.)  Of the tasks marked "MVP Launch," forty (40) were not resolved by the final due date for the project: October 30, 2016.  (*Id.* at ¶ 26.)  Moreover, *none* of the tasks marked "Public Launch Blocker" were complete as of October 30, 2016.  (*Id.* at ¶ 27.)  The *earliest* completion date listed for any such task was November 16, 2016; three were listed as completed after the alleged termination date of November 23, 2016, and five were never marked as completed.  (*Id.*)  Even Dr. Khoshgozaran's screenshot of the "Task Report from JIRA"—which does not account for which tasks were actually complete as of the due date for the MVP—acknowledges that these five tasks were never completed.  (Ex. A at ¶ 165.)

---

[4] In citing to the JIRA tickets, Artissimo does not concede that all of the characterizations contained therein were accurate.  This information simply demonstrates the unreliable nature of Dr. Khoshgozaran's conclusions, even using Neofonie's own data.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

Dr. Khoshgozaran cites only seventeen distinct JIRA tickets in his report.[5]  Of these, eleven were marked "MVP Launch."  (Ex. E at ¶ 28.)  According to Dr. Khoshgozaran, the 398[6] tickets marked in this manner "represent[ ] the tasks related to the MVP product for Defendant."  (Ex. A at ¶ 97.)  Given that the launch of the MVP is the subject of the dispute, these tickets are highly relevant.  However, the report makes no effort to establish that this sample of approximately 2.7% of such tickets is somehow representative of the remainder of the "MVP Launch" tasks—much less representative of the tasks actually in dispute.  The use of such a tiny sample, without establishing representativeness, makes Dr. Khoshgozaran's reliability fundamentally unreliable.  *See Countrywide Fin. Corp.*, 984 F. Supp. 2d at 1033.

Moreover, Dr. Khoshgozaran also notes the existence of the category "Public Launch Blocker" in JIRA.  (*Id.*)  Neofonie has acknowledged that launch blockers would prevent the website going live and thus cause the MVP to fail in its stated purpose.  (Ex. C at 35:3–37:19, 100:9–25.)  But inexplicably, Dr. Khoshgozaran's report offers no explanation of the number of such tickets or their importance.  This oversight also demonstrates the selective and unreliable nature of the report.

---

[5] *See* Ex. A at nn.39–43, 45, 55, 74–75, 77–78, 87–88 (citing specific JIRA tickets); *id.* at ¶ 175 (mentioning "there were at least 17 tickets in JIRA directly related to AX" but specifically identifying only five such tickets).  Dr. Khoshgozaran also includes a screenshot showing thirteen JIRA tickets labeled as "Post MVP."  (Ex. A at ¶ 132.)  These tickets do not relate to the other numbers of "MVP Launch" or "Public Launch Blockers" and therefore are not discussed above.

[6] Artissimo does not know the reason for the variation between the number of tickets described by Dr. Khoshgozaran and the number contained in Neofonie's own documents.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

1    Ultimately, because Dr. Khoshgozaran did not test the website, he

2   simply assessed the credibility of a limited universe of the parties'

3   discussions about website deficiencies.   Even if the inadequate sample

4   were not an issue, the weighing of credibility is squarely the role of the

5   jury, and Dr. Khoshgozaran's testimony on this matter does not aid the jury

6   with his expertise.  *See, e.g.*, *United States v. Rivera*, 43 F.3d 1291, 1295

7   (9th Cir. 1995) ("[A]n expert witness is not permitted to testify specifically

8   to a witness' credibility or to testify in such a manner as to improperly

9   buttress a witness' credibility." (internal quotation omitted)).   Thus, the

10  testimony should be excluded because it is neither helpful nor reliable.

11    Finally, in connection with his fourth opinion, Dr. Khoshgozaran

12  also opines that "[a] delay of about a month is very common for a project

13  of this magnitude."  (Ex. A at ¶ 151.)  This is not helpful to the jury and

14  unduly prejudicial under Rule 403.   A critical question for the jury here is

15  whether Neofonie breached the Agreement by not timely delivering the

16  MVP—a deliverable that was more than two months overdue (under the

17  Agreement) at the time the relationship ceased.   While it may be

18  "common" for this to occur under certain circumstances, the parties are free

19  to contract otherwise, and thus the frequency of the issue does not affect

20  Neofonie's obligations under the Agreement.   However, an expert

21  essentially telling the jury, "that's no big deal, it happens all the time," will

22  necessarily unduly prejudice Artissimo's argument by implicitly answering

23  the *legal* question of whether Neofonie's breach was material.  Because the

24  probative value is extremely limited and the risk of prejudice severe, this

25  testimony should also be excluded.

26

27

28

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    Dr. Khoshgozaran's Fifth Opinion Should Be Excluded Because It Is Not Helpful.**

Finally, Dr. Khoshgozaran opines that Neofonie "was unable to successfully complete the development of the Website due to [Artissimo's] inability or unwillingness to take several necessary actions that would unblock Plaintiff and would enable it to successfully complete the development of the Website."   (Ex. A at ¶ 94.)    However, Dr. Khoshgozaran's analysis is essentially a summary of the documentary evidence in this case presented in a light favorable to Neofonie.   For example, Dr. Khoshgozaran states: "Based on my analysis of JIRA tickets and relevant email exchanges between the Defendant and Plaintiff, this important prerequisite [obtaining a Magnolia license] was not provided to Plaintiff despite numerous requests made to the Defendant in the course of several months."   (*Id.* at ¶ 169; *see also, e.g.*, *id.* at ¶ 165 ("[a] study of tickets created through JIRA illustrates . . ."); *id.* at ¶¶ 166–67 ("The following graph, also generated by JIRA, illustrates . . .").)

This is not "expert" testimony.  Dr. Khoshgozaran has merely read communications between the parties and reached a conclusion as to what those communications mean.  But such testimony does not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Civ. P. 702(a).  A jury is perfectly capable of interpreting the meaning of communications between the parties without the "assistance" of an expert. Moreover, use of an expert to introduce Neofonie's preferred conclusions as to the meaning of such evidence is improper, as the jury may weigh the expert's opinion disproportionately merely by virtue of his qualification as an expert.   Thus, if there is any probative value in Dr. Khoshgozaran's "opinions" as to the meaning of such documents, it is significantly

outweighed by the risk of prejudicing the jury.  As a result, this opinion should be excluded under both Rule 403 and Rule 702.

Lastly, the testimony of Neofonie's corporate representative directly contradicts Dr. Khoshgozaran's "opinion," which means this testimony cannot be helpful to the jury.  Dr. Khoshgozaran states that the Magnolia license was an "important prerequisite" to completing development of the website and that "numerous tasks . . . depend[ed] on or were blocked by" whether Artissimo had purchased this license.  (Ex. A at ¶¶ 168–69, 171.) However, Neofonie's representative admitted that the lack of Artissimo having its own Magnolia license did not impede development of the website and that Neofonie was able to do everything up to go live without that license.  (Ex. C at 76:3–78:10.)  It cannot be helpful for the jury to hear an expert's contrary "opinion" about a fact that Neofonie has already admitted.  Thus, the opinion should be excluded for this additional reason.

**E.**     **Neofonie Should Not Be Permitted to Rely on Documents It Has Not Produced, and the First, Second, and Third Opinions Should Be Excluded for This Additional Reason.**

On October 24, 2018, Artissimo served its Second Set of Requests for Production of Documents and Things on Neofonie, which was based largely on the expert report served the month beforehand.  (*See* Ex. F [Artissimo's Second Set of Discovery Requests].)  This included, *inter alia*, requests for Neofonie to produce "ANY DOCUMENTS or other materials that the EXPERT was provided or given access to by NEOFONIE, its counsel, or ANY other PERSON REGARDING the subject matter of the above-captioned action."  (Ex. F at 7.)

On the required response date, Neofonie objected to every single request and did not produce, or agree to produce, a single document.  (Ex. E at ¶ 11; Ex. G [Neofonie's Responses to Artissimo's Second Set of

Discovery Requests].)   At a subsequent meet and confer, Neofonie's counsel agreed to produce the documents that were given to Dr. Khoshgozaran, but then refused to do so for months.  (Ex. E at ¶¶ 14–22.) After repeated requests, Neofonie finally made a limited production of materials related to its expert in April 2019, consisting of the expert's curriculum vitae, his bills with descriptions of services redacted, the engagement agreement, and a handful of emails between Neofonie and Artissimo.  (*Id.* at ¶ 24.)  As discussed above, Neofonie also produced the JIRA tickets, which it had previously withheld, on April 17, 2019.  (*Id.* at ¶ 23.)

Nevertheless, documents referenced in the expert report remain absent from Neofonie's production—including documents that Artissimo does not have.  Each of Dr. Khoshgozaran's opinions expressly state that they are based on certain documentary evidence, but some of that evidence has not been produced.  In particular, Dr. Khoshgozaran repeatedly relies upon pages from Neofonie's Confluence software that, to the best of Artissimo's knowledge, have not been produced.  Unfortunately, Dr. Khoshgozaran identifies these pages by their web addresses alone— without dates, titles, or other identifiable information that would allow the identification of such documents.  He describes them only in terms of their most general subject matter, such as "services related to newsletters (Mailchimp)" and, "sending emails (Mandrill)."   (Ex. A at ¶ 129.) Although the nature of these references makes locating the documents difficult, Artissimo has searched Neofonie's production (and its own) for these documents and cannot find any that meet these descriptions.  Based on the information provided, there are at least fifteen unique documents

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

referenced that Neofonie did not produce and that Artissimo does not otherwise have. (*Id.* at ¶¶ 121, 125, 129, 134.)[7]

Neofonie should not be permitted to rely upon, or introduce expert testimony that relies upon, documents that it has not produced in this litigation. *See, e.g.*, Fed. R. Civ. P. 37(c); *Optional Cap., Inc. v. Kyung Joon Kim*, No. CV043866ABCPLAX, 2008 WL 11336496, at *7 (C.D. Cal. Jan. 17, 2008). Such documents are directly responsive to document requests served, and allowing Neofonie's reliance on such documents at trial would be fundamentally unfair to Artissimo.

As a result, Dr. Khoshgozaran should not be permitted to provide any opinion based on documents that have not been produced. The missing documents relate to the first, second, and third opinions in the report. In the case of the first opinion, the report attempts to use the missing document to demonstrate that Dr. Khoshgozaran's opinion that Artissimo failed to follow Agile principles of development with respect to the newsletter can be extrapolated to other features. (Ex. A at ¶ 121.) As this is the *only* document relied upon to extend the opinion in this matter, it is of great importance and justifies exclusion of the first opinion.

As to the second opinion, Dr. Khoshgozaran heavily relies upon documents that were not produced to support his conclusion that Neofonie "closely followed" "several key components that exist in almost any complex software development project that utilizes Agile methodologies" during Phase Two. (*Id.* at ¶ 125.) Indeed, five of the nine unique documents that Dr. Khoshgozaran relied upon were not produced. (*See id.*,

---

[7] The only document referenced in these paragraphs that Artissimo has is the document referenced in footnote 61.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

nn.56, 59, and 60.)[8]   This conclusion is the main thrust of the opinion—the basis for concluding that Neofonie did the implementation "correctly."  As such, Neofonie should not be permitted to introduce an opinion substantially based on documents it did not produce.

With respect to the third opinion, Artissimo does not have even one of the eight documents that Dr. Khoshgozaran identified as demonstrating that Neofonie chose "several external software components and services to be integrated into the Website rather than developing them from scratch." (*Id.* at ¶ 129.)  This goes directly to the expert's opinion that Neofonie was not engaging in excessive development of features from scratch, and thus, Neofonie's failure to produce these critical documents should preclude introduction of the opinion.[9]

## V.   **CONCLUSION**

For the foregoing reasons, the proposed expert testimony of Ali Khoshgozaran, Ph.D., should be excluded or, at the least, limited to ensure relevance and reliability.

Dated: September 9, 2019

---

[8] The document referenced in footnote 58 was not produced, but appears to be one of the documents referenced in footnote 56.  (*Id.*)

[9] Neofonie has also failed to produce, and thus Artissimo remains without, another Confluence page referenced in this opinion.  (*Id.* at ¶ 134.)

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

BY:   */s/ Peter C. Sales*
       Roger G. Jones (TN Bar No. 11550)
       Peter C. Sales (TN Bar No. 25067)
       Kimberly M. Ingram (SBN 305497)
       1600 Division Street, Suite 700
       Nashville, Tennessee 37203
       Telephone:  (615) 252-2365
       Facsimile:   (615) 252/6365
       rjones@bradley.com
       psales@bradley.com
       kingram@bradley.com

       *Attorneys for Defendant*

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT

1

## <u>CERTIFICATE OF SERVICE</u>

I, Kimberly M. Ingram, do hereby certify that on this 9th day of September, 2019, a true and correct copy of the foregoing document is being forwarded to the individual listed below in the manner indicated:

<u>**Via CM/ECF System**</u>
Sacha V. Emanuel, Esquire
Emanuel Law
1888 Century Park East, Suite 1500
Los Angeles, California 90067

*/s/ Kimberly M. Ingram*
Kimberly M. Ingram, Esq.

ARTISSIMO'S MEMO SUPPORTING EXCLUSION OF EXPERT